UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTOR ENCARNACION, KALEB HAGOS, KENNETH CLAVASQUIN, and THE BRONX DEFENDERS, individually and on behalf of a class of all others similarly situated;<br><br>Plaintiffs,<br><br>– against –<br><br>CITY OF NEW YORK;<br><br>Defendant. | 16 Civ. 156 (DLC)<br><br>AMENDED COMPLAINT<br><br>[CLASS ACTION]<br><br>JURY TRIAL DEMANDED |

**PRELIMINARY STATEMENT**

1. It is axiomatic that the government may not seize property without due process of law. Yet the City of New York (the "City"), operating through and in conjunction with the New York City Police Department ("NYPD"), has a policy, pattern, and practice of unconstitutionally retaining cash and other non-contraband personal property seized pursuant to an arrest ("Personal Property") long after the criminal case is over.[1] Each year, the City of New York takes cash and cell phones from thousands of New Yorkers—particularly those who can least afford it—in violation of their constitutional rights.

2. When someone is arrested, the NYPD routinely seizes their Personal Property and categorizes it. Property that the NYPD asserts may be relevant to the underlying arrest is categorized as "Arrest Evidence." Seized property is also sometimes categorized as

---

[1] For the purposes of this complaint, cases or prosecutions are "over" or "terminated" when: (a) the charges against the property owner have been dismissed by the court or the prosecutor, and the time to appeal has lapsed; or (b) the property owner has entered a plea of guilty and waived the right to trial. In essence, cases or prosecutions are over or terminated where there is no longer a possibility of a trial against the property owner, and therefore no longer a need for the Personal Property that was seized in the underlying criminal case.

"Forfeiture."[2] In practice, both Arrest Evidence property and Forfeiture property are often Personal Property like cell phones and cash. The City requires all persons seeking to retrieve such property to first obtain a release from the District Attorney's Office ("DA Release"). In theory, the purpose of the DA Release is to ensure that the prosecutor has an opportunity to determine whether the Personal Property is still needed by the government.

3. The Rules of the City of New York specify that the District Attorney's Offices must respond in writing within 15 days to a demand for a DA Release. Under the City's rules, if the District Attorney's Office takes the position that a claimant's Personal Property should not be released, it must set forth specific grounds justifying continued retention. In practice, however, this deadline is often disregarded. Notably, obtaining any response to a request for a DA Release after a case is terminated is especially frustrating because there is no longer a prosecuting attorney actively working on the matter. In the Bronx, the District Attorney's Office frequently fails to respond to requests for DA Releases after the termination of criminal proceedings, even in response to a formal demand. As a consequence of this inaction, claimants seeking the return of their Personal Property are left in limbo without either a DA Release or any articulated basis for why a DA Release could justifiably be denied. When property owners inform the City that a request for a DA Release has been ignored, the City nonetheless refuses to return the property and fails to provide an alternate recourse or any assistance.

4. The City's policy and practice of withholding Personal Property even where no justification for continued retention exists is unconstitutional. Once a criminal case is terminated, the District Attorney's presumptive interest in Arrest Evidence dissolves. If the City wants to retain the Personal Property, due process requires a new legal basis for doing so.

---

[2] In practice, the City rarely files an affirmative forfeiture case in state court even when cash is labeled "Forfeiture."

Similarly, for property originally categorized as Forfeiture at the time of arrest, once the criminal case is terminated, the City cannot continue to withhold property even when the District Attorney has failed to commence a forfeiture proceeding.

5. The individual plaintiffs in this action—Victor Encarnacion, Kaleb Hagos, and Kenneth Clavasquin (collectively, the "Individual Plaintiffs")—have each been denied due process as a result of the City's policy, pattern, and practice regarding the return of seized Personal Property. Even after the original justification for seizing their property had long since disappeared, the City refused to return their phones and cash to them despite making no new showing for why retention of this property was justified.

6. The Individual Plaintiffs are all represented in their efforts to obtain their Personal Property by The Bronx Defenders, a not-for-profit organization that provides criminal defense and civil legal services to low-income people in the Bronx. Advocates and attorneys at The Bronx Defenders assist hundreds of clients every year who are attempting to retrieve property seized pursuant to an arrest. The Bronx Defenders expends considerable resources attempting to obtain property from the City and releases from the District Attorney for clients whose property is being unlawfully held.

7. In short, current NYPD policy and practice places an unconstitutional burden on property claimants seeking to retrieve their belongings. Where a criminal case is terminated, and the government has not established a new legal basis to retain Personal Property that was seized pursuant to an arrest, the City must return such property to its owner, regardless of whether they seek or can obtain a DA Release. The Individual Plaintiffs and The Bronx Defenders (collectively, "Named Plaintiffs"), on behalf of themselves and a class of similarly situated individuals, bring this civil rights lawsuit to remedy the continuing violation of their

3

rights secured by 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

## PARTIES

8. Plaintiffs VICTOR ENCARNACION, KALEB HAGOS, and KENNETH CLAVASQUIN are all residents of Bronx County, New York.

9. Plaintiff THE BRONX DEFENDERS ("BXD") is a 501(c)(3) not-for-profit organization that provides free legal services to tens of thousands of New Yorkers every year on a wide range of matters, from defending the accused in criminal cases to vindicating property owner's rights in civil forfeiture cases to representing parents accused of abuse and neglect. BXD is duly incorporated in New York State and has its principal place of business in New York City.

10. Defendant CITY OF NEW YORK (the "City") is a municipal corporation duly incorporated in New York State. The City of New York has established, maintains, and operates the NYPD as a constituent department or agency. Pursuant to local law, the Property Clerk Division of the NYPD ("NYPD Property Clerk") is responsible for accepting, vouchering, safeguarding, storing, producing as required by court, returning to legal owner, or otherwise lawfully disposing of all property coming into custody of the NYPD.

## JURISDICTION AND VENUE

11. This action is authorized by 42 U.S.C. § 1983. Subject matter jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4) because this action seeks redress for violations of Plaintiffs' rights under the United States Constitution.

12. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights of the parties and to grant all further relief deemed necessary and proper.

13. Venue is proper in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Counties of the Bronx and New York.

## FACTUAL BACKGROUND

### I. The City's Property Retention Policy and Practice

14. Every year the NYPD effectuates over three hundred thousand arrests. In the vast majority of these cases, the arresting officers seize some form of property from the person arrested. This property is recorded in the Property and Evidence Tracking System ("PETS") by an NYPD officer, who also designates the property in one or more categories; for instance, held for safekeeping during the booking and arraignment process, necessary as Arrest Evidence, or subject to a potential future civil or criminal forfeiture process ("Forfeiture").

15. The authority to retain property after arrest as evidence in a criminal investigation or proceeding is vested in the NYPD Property Clerk by local law in the New York City Administrative Code ("Admin. Code") § 14-140.

16. The City's regulations concerning the return of property seized pursuant to an arrest are set forth in the Rules of the City of New York ("RCNY"). *See* 38 RCNY 12-31, *et seq*.

17. The NYPD broadly exercises its discretion to designate Personal Property as Arrest Evidence where it perceives any "relation to the matter for which the person has been arrested." 38 RCNY § 12-31. In drug-related arrests, for example, the NYPD routinely designates seized cell phones as Arrest Evidence.

18.   Where over $1000 is seized from any defendant who is charged with a drug-related crime, the NYPD routinely designates such property as Forfeiture. Forfeiture property may also be, and frequently is, Arrest Evidence. *See* New York Police Department Patrol Guide § 218-38.

19.   The City requires the NYPD to return Arrest Evidence to a property owner upon timely demand, if the property owner presents proper identification, a property voucher created through the PETS system, and a DA Release. 38 RCNY § 12-35(b). The City will not return Arrest Evidence without a DA Release, even when the property owner's case is over and even when no showing has been made regarding a need for continued retention, no matter how much time has passed. The City similarly requires a DA Release for Forfeiture property, even when the property owner's case is over and the District Attorney's Office has not initiated a forfeiture proceeding.

20.   Pursuant to City regulations, when a property owner requests a DA Release, the District Attorney's Office must either issue the DA Release or provide a written denial within 15 days of the request. 38 RCNY § 12-34(c)(e). If the request is denied, the District Attorney must identify the basis for retaining the property. When a case is over, City regulations permit the District Attorney to deny a DA Release only where they can show in good faith that the property is still needed as evidence for: (a) a pending appeal; (b) a collateral attack or notice that a collateral attack will be commenced; (c) another specifically identified criminal proceeding; or (d) an ongoing identifiable criminal investigation. 38 RCNY § 12-34(d). A denial must be in writing with the grounds set forth, and a property owner can appeal the denial to a supervisor who must respond in writing within ten days of a request for a review. 38

RCNY § 12-34(e). The intention to file a Forfeiture action against the property owner is <u>not</u> an enumerated reason to withhold the DA Release.

21.     In practice, the 15-day deadline to respond to a request for a DA Release has been brazenly ignored. In the Bronx, there is no formal system to record a claimant's demand for a DA Release. It can take weeks and often months for the District Attorney's Office to respond to a request for a DA Release, even when a formal written demand has been served upon their office. In many cases, the district attorneys do not respond at all. In the Bronx, even when the District Attorney's Office refuses to issue a DA Release in response to a claimant's demand, the prosecutor virtually never does so in writing as required by the City regulations.

22.     If the property owner is unable to secure a DA Release within 270 days of submitting a request to the NYPD Property Clerk for the return of Arrest Evidence after the termination of a criminal case, the City's regulations maintain that the NYPD "may dispose of the property according to law." 38 RCNY § 12-35(d). Thus, if the District Attorney fails to respond to a request for a DA Release or refuses to produce one within 270 days after the claimant's demand to the NYPD, the property owner may never get his or her property back as the NYPD regulations allow "disposal" of the property.

23.     Rather than offering recourse for property owners who have attempted to get a DA Release and have received either no response or an inadequate response, the City's policy and practice compounds the issue. Citing 38 RCNY § 12-35, the NYPD Property Clerk insists that a District Attorney's inaction in providing a DA Release is an absolute bar to the return of Arrest Evidence and property marked as Forfeiture, even where more than 15 days has elapsed since the claimant demanded a DA Release. The City maintains this policy and practice even

where the case has been dismissed and thus "deemed a nullity." N.Y. Crim. Proc. Law § 160.60.

24. Most people who attempt to retrieve property do not have a lawyer to assist them, making the process even more daunting. As a result, many people give up trying to obtain their property rather than attempting to navigate the system.

## II. The Individual Plaintiffs

### *Victor Encarnacion*

25. Victor Encarnacion is a 35-year-old man who lives in the Bronx.

26. On or about November 7, 2014, Mr. Encarnacion was arrested by the NYPD.

27. The Bronx Defenders was appointed to represent Mr. Encarnacion.

28. At the time of his arrest, Mr. Encarnacion was carrying his Apple iPhone. The NYPD seized Mr. Encarnacion's phone and categorized it as Arrest Evidence.

29. His phone was subsequently recorded by the NYPD into the PETS system, and the NYPD provided Mr. Encarnacion with NYPD Property Clerk Invoice No. 2000377577.

30. After five court appearances, including his arraignment, Mr. Encarnacion's case was dismissed on May 12, 2015.

31. The District Attorney did not appeal this dismissal within the 30 day deadline under C.P.L § 460.10.

32. On May 12, 2015, the day Mr. Encarnacion's criminal court case was dismissed, he made a *pro se* demand for return of his property at the Bronx Division of the NYPD Property Clerk in the sub-basement of the Bronx County Criminal Court Building. The NYPD memorialized this demand on a form captioned "Property Clerk Division Acknowledgment of Demand."

33. Also on May 12, 2015, Mr. Encarnacion, through his counsel The Bronx Defenders, made a written request to the ADA for a DA Release.

34. Employees from The Bronx Defenders repeatedly left voicemail messages for the assigned ADA requesting a DA Release for Mr. Encarnacion's property, including but not limited to on June 18, 2015.

35. On July 6, 2015, Mr. Encarnacion, through his counsel The Bronx Defenders, made another demand on the NYPD for return of his property via certified mail.

36. On July 17, 2015, The Bronx Defenders went to the NYPD Property Clerk on behalf of Mr. Encarnacion and were provided a letter dated July 10, 2015, acknowledging the prior demands ("Encarnacion Acknowledgment Letter"). In the Acknowledgment Letter, the NYPD also acknowledged the May 12, 2015 *pro se* demand.

37. The Encarnacion Acknowledgement Letter stated that Mr. Encarnacion's phone would only be returned to him with a DA Release.

38. On September 3, 2015, Mr. Encarnacion and an employee from The Bronx Defenders went to the District Attorney's Office in the Bronx County Criminal Court Building and requested a DA Release. The request was orally denied without any justification, additional information, or memorialization. They then went to the NYPD Property Clerk's office and requested Mr. Encarnacion's property. The request was denied because, the Property Clerk stated, Mr. Encarnacion did not have a DA Release.

39. Only after this action was filed did the District Attorney suddenly produce a DA Release, eight months after Mr. Encarnacion's case was dismissed and notwithstanding repeated prior requests.

40. Mr. Encarnacion retrieved his phone from the NYPD Property Clerk on or about March 28, 2016.

41. At no time did the City dispute that the case against Mr. Encarnacion had terminated. At no time did the City proffer that the District Attorney or the City had any basis to continue to retain Mr. Encarnacion's phone after his case was over.

42. As a result of the City's unlawful policy and practice, Mr. Encarnacion was deprived of his rights under the Fourth and Fourteenth Amendments, suffered the loss of his phone, incurred expenses terminating the installment contract for the phone, and had to purchase a new phone.

*Kaleb Hagos*

43. Kaleb Hagos is a 25-year-old man who resides in the Bronx with his mother. Mr. Hagos previously lived in Ohio but returned to the Bronx in October of 2015.

44. On September 23, 2015, Mr. Hagos was arrested by the NYPD.

45. On September 24, 2015, The Bronx Defenders was appointed to represent Mr. Hagos in his criminal proceeding.

46. At the time of his arrest, Mr. Hagos had $2,931.68 in cash in his right front pocket and an Apple iPhone in his left front pocket. There were three other cell phones in his car. The NYPD seized Mr. Hagos's car, as well as his cash and all of the cell phones. Mr. Hagos was not provided with a voucher at the time of his arrest or arraignment.

47. Of the cell phones seized at the time of arrest, one was Mr. Hagos' while two of the other cell phones belonged to Mr. Hagos's friend—who was in the car with him just prior to the arrest but was not arrested—and the other belonged to Mr. Hagos's brother.

48. Although Mr. Hagos sought the return of his property at the NYPD 50th Precinct shortly after being released from his arraignment on September 24, 2015, he was given no invoice and no information about retrieving his property. He was informed that the person he needed to speak to about these matters was not available.

49. The Bronx Defenders subsequently learned that Mr. Hagos's property had been recorded by the NYPD into the PETS system sometime after his arrest. The car and his phone were categorized as Arrest Evidence and the cash was categorized for Forfeiture. Mr. Hagos was subsequently provided with NYPD Property Clerk Invoice Nos. 2000471114 and 2000471076 on October 2, 2015.

50. On December 21, 2015, the District Attorney issued a DA Release for Mr. Hagos's vehicle, but not for his phone or cash.

51. On March 2, 2016, Mr. Hagos's case was dismissed on motion of the District Attorney.

52. Mr. Hagos also picked up his car in March 2016.

53. On March 9, 2016, Mr. Hagos's counsel at The Bronx Defenders requested a DA Release for his remaining property from the assigned ADA. The ADA expressed a willingness to release his phone but said he would need to speak to his supervisors about the cash. He promised to call back with an answer about the cash. He never called back. Nor did he issue a DA Release for either the phone or the cash.

54. On March 31, 2016, Mr. Hagos, through his counsel at The Bronx Defenders, made a written request to the District Attorney for a DA Release via certified mail.

55. Also on March 31, 2016, Mr. Hagos, through his counsel at The Bronx Defenders, made a written demand for the return of his property to the NYPD Property Clerk via certified mail.

56. On April 13, 2016, Mr. Hagos, through his counsel at The Bronx Defenders, sent another written demand to the NYPD Property Clerk via certified mail.

57. On May 24, 2016, an employee of The Bronx Defenders went to the District Attorney's Office in the Bronx County Criminal Court Building to see if a DA Release was prepared. There was still no DA Release.

58. On June 2, 2016, an employee of The Bronx Defenders went to the Property Clerk's window at the Bronx Criminal Court and was told that Mr. Hagos's property could not be released without a DA Release.

59. At no time did the City dispute that the case against Mr. Hagos had terminated. At no time did the City proffer that the District Attorney or the City had any basis to continue to retain Mr. Hagos's phone after his case was over. Nor has the NYPD ever filed a forfeiture action for Mr. Hagos's cash.

60. Even though the criminal charges against Mr. Hagos have been dismissed and sealed, the City refuses to give Mr. Hagos his phone and cash back.

61. As a result of the City's unlawful policy and practice, Mr. Hagos has been deprived of his rights under the Fourth and Fourteenth Amendments, has suffered and continues to suffer the loss of his cash and phone, incurred expenses under his phone carrier's insurance policy, and had to purchase a replacement phone.

*Kenneth Clavasquin*

62. Kenneth Clavasquin is a 23-year-old man who resides in the Bronx with his mother.

63. On June 2, 2015, Mr. Clavasquin was arrested by the NYPD outside of his apartment building.

64. At the time of his arrest. Mr. Clavasquin was carrying his Apple iPhone.

65. The NYPD seized his phone and subsequently it was entered into the PETS database. The NYPD provided Mr. Clavasquin with Property Clerk Invoice No. 2000434528. The phone was categorized as Arrest Evidence.

66. On June 3, 2015, The Bronx Defenders was appointed to represent Mr. Clavasquin in his criminal proceeding.

67. On December 8, 2015, Mr. Clavasquin's criminal case was dismissed.

68. On December 9, 2015, Mr. Clavasquin brought his certificate of disposition to the NYPD Property Clerk. The NYPD Property Clerk informed Mr. Clavasquin that because the phone was vouchered as Arrest Evidence, he would need a DA Release to retrieve his property.

69. Despite calling the assigned ADA to request a DA Release on several occasions between December 2015 and February 2016, Mr. Clavasquin's counsel at The Bronx Defenders never obtained a DA Release or a written explanation as to why the Release was being denied.

70. On April 18, 2016, Mr. Clavasquin, through his counsel, submitted a written demand for the property to the NYPD Property Clerk and a written demand for a DA Release to the Bronx District Attorney's Office, both by certified mail.

71. To date, Mr. Clavasquin has not received a response from the NYPD Property Clerk or the District Attorney's Office. Nor has his property been returned.

72. At no time did the City dispute that the case against Mr. Clavasquin had terminated. At no time did the City proffer that the District Attorney or the City had any basis to continue to retain Mr. Clavasquin's property after his case was terminated.

73. As a result of the City's unlawful policy and practice, he has been deprived of his rights under the Fourth and Fourteenth Amendments, and suffered and continues to suffer the loss of his phone, and incurs monthly costs on an installment contract associated with the phone.

### III.   Facts Regarding The Bronx Defenders

74. The Bronx Defenders often assists clients whose property was improperly retained pursuant to the City's unlawful policy and practice. Considerable staff resources are tied up in navigating the many bureaucratic hurdles required to retrieve property.

75. On average, The Bronx Defenders handles over 500 matters a year relating to retrieving clients' Personal Property. Many of these clients are similarly situated to the Individual Plaintiffs —their cases are over, there is no longer any possibility that the seized property could be used in a trial, neither the City nor the District Attorney has made any affirmative showing of need to retain the property, and yet the City refuses to return it.

76. The Bronx Defenders must routinely expend resources to seek return of client property from the City. This includes making written demands on the NYPD Property Clerk, following up on those demands, and often going to the NYPD Property Clerk in person to make and follow up on demands. The Bronx Defenders also expends significant resources

making telephone calls and writing e-mails or letters to the District Attorney's Office requesting DA Releases.

77. In fact, the Bronx Division of the NYPD Property Clerk regularly refers property owners to The Bronx Defenders for assistance when it has refused to return their property. The Bronx Defenders also expends resources assisting those individuals who were not originally clients in the underlying criminal case.

78. Because it expends considerable resources trying to obtain the return of Arrest Evidence and Forfeiture property that the City has unlawfully withheld from its clients, The Bronx Defenders has been forced to divert resources from its core mission of providing legal services to low-income New Yorkers facing criminal charges, family court proceedings, deportation, or eviction.

## CLASS ACTION ALLEGATIONS

79. The Plaintiffs bring this action on behalf of themselves and all others similarly situated, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2). The proposed class is composed of all individuals who have been or will be unable to secure the release from the NYPD Property Clerk of Personal Property seized in connection with an arrest where (i) the individual named on the voucher for the property can no longer be tried on any charge that was the original basis for the arrest, and (ii) the City has made no showing of any continued basis to retain the property. All of these people have had their rights violated or are at risk of having their rights violated by the City's policy and practice regarding the retention of property seized pursuant to an arrest.

80. This action satisfies all four requirements of Rule 23(a):

      a.  *Numerosity*: Joinder of all class members is impracticable because of the size of the class. Upon information and belief, there are hundreds if not thousands of people in the City of New York who have been or will be unable to obtain the release of their seized property, even though their cases are over, there is no possibility that the property could be used at a trial, and no new grounds have been provided to justify the continued retention of the property.

      b.  *Commonality*: There are questions of law and fact common to all members of the class, including, but not limited to, whether the City violates the Constitution when it refuses to return Personal Property to property owners after their cases are over where no new legal predicate for retention of the property has been proffered, let alone established.

      c.  *Typicality*: The claims of the Individual Plaintiffs are typical of those of the class. Each Named Plaintiff has been harmed by the City's unconstitutional policy and practice of failing to release Personal Property after criminal cases are terminated without establishing a new basis to retain the property.

      d.  *Adequacy of Representation*: The Named Plaintiffs and class counsel will fairly and adequately represent the interests of the class. The Named Plaintiffs have no interests in this matter that are antagonistic to other class members. Class counsel is experienced in federal civil rights and class action litigation and has the necessary resources to pursue this litigation.

**FIRST CLAIM FOR RELIEF**
Violation of Due Process under the Fourteenth Amendment
(All Plaintiffs against the City)

    81.   Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 80, above.

82. By adopting, implementing, and enforcing a policy and practice of refusing to return Personal Property, when (i) there is no possibility that the arrested person can be tried on any charge that was the original basis for the arrest and (ii) the City has made no showing of any continued basis to retain the property, the City under color of state law has denied Plaintiffs and a class of similarly situated people their right to due process, in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

### SECOND CLAIM FOR RELIEF
Violation of the Fourth Amendment
(All Plaintiffs against the City)

83. Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 82, above.

84. By adopting, implementing, and enforcing a policy and practice of refusing to return Personal Property that was seized in connection to an arrest, when (i) there is no possibility that the arrested person can be tried on any charge that was the original basis for the arrest and (ii) the City has made no showing of any continued basis to retain the property, the City under color of state law has denied Plaintiffs and a class of similarly situated people their right to be free of unreasonable seizures, in violation of the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court:

1. Certify this matter as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) on behalf of the proposed class;

2. Declare that Defendant's policy and practice have violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution;

3.   Declare that Admin. Code § 14-140 and 38 RCNY § 12-31, *et seq.* are unconstitutional as applied and on their face;

4.   Order all appropriate injunctive relief as warranted, including but not limited to:

   a.   ordering Defendant to release the Individual Plaintiffs' property to them; and

   b.   ordering the City to promulgate, enact, follow, and enforce new policies that ensure the NYPD releases Personal Property that was seized in connection to an arrest, when (i) there is no possibility that the arrested person can be tried on any charge that was the original basis for the arrest and (ii) the City has made no showing of any continued basis to retain the property;

5.   Award compensatory damages to the Individual Plaintiffs;

6.   Award disbursements, costs, and attorneys' fees pursuant to 42 U.S.C. § 1988; and

7.   Grant such other and further relief that may be just and proper.

Dated: June 3, 2016
Bronx, New York

Respectfully submitted,

THE BRONX DEFENDERS

By: _____

Mariana (Molly) Kovel
Adam N. Shoop
Johanna B. Steinberg
360 East 161st Street

        Bronx, New York 10451
        (718) 838-7878
        mollyk@bronxdefenders.org
        adams@bronxdefenders.org
        johannas@bronxdefenders.org

        BOIES, SCHILLER & FLEXNER LLP

        Eric J. Brenner
        Zachary J. F. Kolodin
        575 Lexington Avenue
        New York, NY 10022
        Telephone: (212) 446-2300
        Facsimile: (212) 446-2350
        ebrenner@bsfllp.com
        zkolodin@bsfllp.com

        *Attorneys for Plaintiffs*