UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTOR ENCARNACION, KALEB HAGOS,
KENNETH CLAVASQUIN and
THE BRONX DEFENDERS, individually and
on behalf of a class of all others similarly
situated;

                        Plaintiffs,

– against –

THE CITY OF NEW YORK

                        Defendant

16-cv-156 (DLC)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION TO CERTIFY A CLASS UNDER
<u>FEDERAL RULE OF CIVIL PROCEDURE 23</u>**

1

**PRELIMINARY STATEMENT**

Plaintiffs challenge the City of New York's (the "City") policy and practice of refusing to return non-contraband personal property seized by the City and designated as either arrest evidence or forfeiture ("Personal Property"), even after the criminal case is over[1] and the government has made no new showing regarding why it has the right to retain such Personal Property. The constitutional dimensions of this issue have long been recognized in this Circuit. *See McClendon v. Rosetti*, 460 F.2d 111 (2d Cir. 1972).

The City regulations at issue set forth specific guidelines governing the release of potential evidence that has been seized in connection with an arrest ("Arrest Evidence"). 38 RCNY § 12-31 *et seq*. These regulations require the New York City Police Department ("NYPD") Property Clerk to return all non-contraband Arrest Evidence to a claimant who produces proper identification, the voucher for the property, and written authorization of release from a District Attorney's Office (a "DA Release"). These regulations also provide that when a property owner requests a DA Release, the District Attorney's Office ("DA's Office") must either issue the DA Release or provide a written denial within 15 days of the request. 38 RCNY § 12-34(c). If the request is denied, the DA's Office must identify the basis for retaining the property.

In practice, this fifteen-day deadline has been brazenly disregarded; for example, the Bronx DA's Office often fails to respond to requests for DA Releases for months on end even

---

[1] For the purposes of this memorandum, cases or prosecutions are "over" or "terminated" when: (a) the charges against the property owner have been dismissed by the court or the prosecutor, and the time to appeal has lapsed; or (b) the property owner has entered a plea of guilty and waived the right to trial. In essence, cases or prosecutions are over or terminated where there is no longer a possibility of a trial against the property owner, and therefore no longer a need for the Personal Property that was seized in the underlying criminal case.

where the underlying criminal case has terminated. (Declaration of Alexandra Rockoff, June 6, 2016 ("Rockoff Decl."), at ¶¶ 14-15; Declaration of Amalea Smirniotopoulos, June 6, 2016 ("Smirniotopoulos Decl."), at ¶ 14.) Yet, the NYPD Property Clerk nonetheless obstinately adheres to the precise terms of the City's regulations and refuses to release Arrest Evidence because claimants do not have a DA Release. (Rockoff Decl. ¶¶ 6, 15; Smirniotopoulos Decl. ¶ 6; Declaration of Lisa Schreibersdorf, June 7, 2016 ("Schreibersdorf Decl."), at ¶¶ 6, 9.) Similarly, the NYPD Property Clerk also refuses to release property marked as Forfeiture without a DA Release even when the criminal case is over and no forfeiture proceeding could commence. (Declaration of Steven Wasserman, June 6, 2016 ("Wasserman Decl."), at ¶ 5.) This leaves claimants in a Kafkaesque situation where the City conditions the return of Personal Property for cases that are over on the production of a DA Release that a claimant often cannot practically obtain—even when they are entitled to one under the City's own rules.

The City's absolute insistence on a DA Release, even where cases are terminated, violates the constitutional rights of Plaintiffs and a class of similarly situated individuals. The Second Circuit has previously held that due process requires that the government establish a new basis for detention if it is going to keep non-contraband property once criminal proceedings have terminated. *McClendon v. Rosetti,* 460 F.2d 111, 116 (2d Cir. 1972). The New York Court of Appeals has similarly recognized that "it would be inconsistent with due process . . . to allow the District Attorney to block the return of the property by simply refusing to issue a release in a case where all criminal matters to which the property is relevant have terminated." *DeBellis v. Property Clerk*, 79 N.Y. 2d 49, 58-59 (1992).

Under these and related constitutional principles, the City—as the holder of the property—is required to establish a new basis for its retention after the underlying criminal case

has terminated, or to return it to its owner. Instead, the City's rules purport to authorize the NYPD Property Clerk's indefinite retention of Personal Property simply by virtue of inaction on the part of the DA's Office. The City cannot eliminate their constitutional obligations by shifting responsibility onto the DA's Office.

To remedy these ongoing constitutional violations and ensure the City's rules comply with the controlling constitutional standards, Plaintiffs seek certification of a class of individuals who have been, or will be, deprived of their due process rights in seeking to secure the release of their Personal Property from the City. Because the underlying practices are widespread (and, indeed, embodied in an unconstitutional City rule), the proposed class includes many hundreds if not thousands of individuals, all of whom face common injury and will similarly benefit from the declaratory and injunctive relief sought in the Amended Complaint. Accordingly, the Court should grant this motion and certify the proposed class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2).

## FACTUAL BACKGROUND

A.  <u>The City's rules governing the return of Personal Property</u>

When an individual is arrested in New York City, the NYPD routinely seizes property they are carrying. (Am. Cmplt. ¶ 2.) Although some property is designated as "Safekeeping" and returned to the owner upon demand, the NYPD broadly exercises its discretion to hold non-contraband property as Arrest Evidence where it perceives any "relation to the matter for which the person has been arrested." 38 RCNY § 12-31. In drug-related arrests, for example, the NYPD routinely designates seized U.S. currency and cell phones as Arrest Evidence. (Am. Cmplt. ¶ 2.) After seizure, Arrest Evidence is vouchered and held by the NYPD Property Clerk. (Am. Cmplt.

¶ 10.) The NYPD also broadly exercises its discretion to categorize cash seized during an arrest as Forfeiture. *See* New York Police Department Patrol Guide § 218-38.

The Rules of the City of New York require the return of Arrest Evidence to a claimant presenting proper identification, the governing voucher, and a DA Release.[2] 38 RCNY § 12-35(b). The City's rules further provide that the DA's Office must, upon request, issue a DA Release within fifteen days or provide a written denial stating the grounds for retaining the property. 38 RCNY § 12-34(c)-(e). In circumstances where the underlying criminal proceeding relevant to the property has terminated, the DA's Office can only refuse to return Arrest Evidence based on a good faith determination that the property is still needed as evidence for: (a) a pending appeal; (b) a collateral attack or notice that a collateral attack will be commenced; (c) another specifically identified criminal proceeding; or (d) an ongoing identifiable criminal investigation. 38 RCNY § 12-34(d). If the DA's Office invokes one of these grounds as a basis to refuse to provide a DA Release, the property owner can appeal to a supervisor who must respond in writing within ten days of a request for a review. 38 RCNY § 12-34(e). The regulation does not include potential forfeiture of property as one of the valid reasons for the denial of a DA Release. 38 RCNY § 12-34(d).

In sum, as contemplated by the City's rules, a claimant seeking the return of Personal Property after a criminal case is over is entitled to have the NYPD Property Clerk release the property or be informed of the grounds why such property is being withheld so the property owner can appeal the decision.

---

[2] These regulations were promulgated in an attempt to comply with the final order in *McClendon v. Rosetti*, 460 F.2d 111 (2d Cir. 1972). *See McClendon v. Rosetti*, No. 70 Civ. 3851 (MEL), 1994 WL 17107022 (S.D.N.Y. 1994).

B.  The City's policy and practice of unlawfully retaining Personal Property

In practice, the fifteen-day deadline for the DA's Office to respond to a request for a DA Release is systematically ignored. (Am. Cmplt. ¶ 21.) It can take weeks or even months for a prosecutor to respond, even when a formal demand has been issued. (Am. Cmplt. ¶ 21; Rockoff Decl. ¶ 14; Declaration of Michael Pope, June 7, 2016 ("Pope Decl."), at ¶ 10; Smirniotopoulos Decl. ¶¶ 13-14.) In many cases, the prosecutor does not respond at all. (Am. Cmplt. ¶ 21; Pope Decl. ¶ 10; ) Once a case concludes, in at least some DA's Offices, the prosecutor who previously worked on the case "does not prioritize a case that has ended, and has no motivation to assist in" securing a DA Release, "no matter how justified."[3]

Nevertheless, citing 38 RCNY § 12-35(b), the NYPD Property Clerk steadfastly insists on a DA Release as a precondition to releasing Personal Property—no matter how egregious a prosecutor's inattention to a claimant's retrieval efforts. (Am. Cmplt. ¶ 23; Rockoff Decl. ¶ 15.) As a consequence, the City routinely deprives claimants of their Personal Property even when the original basis for holding the property is no longer conceivably relevant and no new showing has been offered for why retention of the property is justified. (Am. Cmplt. ¶ 19.) This situation is exacerbated by the fact that most people who attempt to retrieve property do not have a lawyer to assist them in trying to compel the City or the DA's Office to act. (Am. Cmplt. ¶ 24.) Many claimants give up trying to obtain their Personal Property rather than attempting to navigate the system. (Am. Cmplt. ¶ 24; Schreibersdorf Decl. ¶ 13.) The only recourse for property owners whose requests for a DA Release are being ignored is to bring an Article 78 lawsuit – a

---

[3] *Public Hearings on Civil Forfeiture and Deferred Prosecution Agreements Before the New York State Assembly Committee on Codes and Judiciary*, Dec. 9, 2014 (Statement of of Sergio Jimenez, Director Civil Justice Practice, Brooklyn Defender Services), http://bds.org/wp-content/uploads/Civil-Forfeiture-Testimony-Final-12.4.14.pdf (discussing the practices of the Brooklyn DA's Office).

proceeding whose filing fee alone usually exceeds the value of the property being unlawfully detained. (Pope ¶¶ 11-12.)

        C.       <u>The harm that the City's policy and practice has caused the Named Plaintiffs</u>

Plaintiffs Encarnacion, Clavasquin, Hagos, and The Bronx Defenders (the "Named Plaintiffs") have all been harmed by the City's policy and practice of refusing to release Personal Property even in the absence of any basis for continued retention.

Victor Encarnacion was arrested in November 2014, and his phone was taken as Arrest Evidence. (Am. Cmplt. ¶¶ 26, 28.) The Bronx DA's Office dismissed its criminal case against him in May 2015. (Am. Cmplt. ¶ 30.) Thereafter, he made multiple demands on both the NYPD Property Clerk and the Bronx DA's Office for the return of his property. (Am. Cmplt. ¶¶ 32-38.) The Bronx DA's Office did not act, and the NYPD Property Clerk refused to return his phone without a DA Release. (Am. Cmplt. ¶ 38.) At the time of the original complaint in this action, Mr. Encarnacion had been waiting eight months for the return of his phone, even though the Bronx DA's Office had made no showing justifying the continued retention of this property. (Am. Cmplt. ¶ 39.) Only after commencing this action did the Bronx DA's Office finally issue him the DA Release that the NYPD Property Clerk required to release his phone. (Am. Cmplt. ¶ 39.)

Kaleb Hagos was arrested in September 2015, and his cell phone was taken as Arrest Evidence and his cash was designated Forfeiture. (Am. Cmplt. ¶¶ 44, 46, 49.) The Bronx District Attorney dismissed his case on March 2, 2016. (Am. Cmplt. ¶ 51.) Since then he has made several formal and informal demands for a DA Release, all in vain. (Am. Cmplt. ¶¶ 50-58.) During this time, the Bronx DA's Office has made no showing justifying the continued retention

of Mr. Hagos's property. (Am. Cmplt. ¶ 59.) The NYPD Property Clerk has nevertheless refused to release his property, leaving Mr. Hagos without his phone and cash. (Am. Cmplt. ¶ 61.)

Kenneth Clavasquin was arrested in June 2015, and his cell phone was taken as Arrest Evidence. (Am. Cmplt. ¶¶ 63-65.) The Bronx DA's Office dismissed his case on December 8, 2015. (Am. Cmplt. ¶¶ 67.) Thereafter, he made multiple demands on both the NYPD Property Clerk and the Bronx DA's Office for the return of his property. (Am. Cmplt. ¶¶ 68-71.) The Bronx DA's Office has not responded, despite Mr. Clavasquin sending a written demand by certified mail. (Am. Cmplt. ¶ 70-71.) In turn, the NYPD Property Clerk refused to return his phone without a DA Release. (Am. Cmplt. ¶ 71.) Since the dismissal of his criminal case, the Bronx DA's Office has made no showing justifying the continued retention of Mr. Clavasquin's property. (Am. Cmplt. ¶ 72.) The NYPD Property Clerk has nevertheless refused to release his property, leaving Mr. Clavasquin without his phone. (Am. Cmplt. ¶ 73.)

The Bronx Defenders is a 501(c)(3) not-for-profit organization that provides free legal services to tens of thousands of New Yorkers every year on a wide range of matters. (Am. Cmplt. ¶ 9; Declaration of Mariana Kovel, June 7, 2016 ("Kovel Decl."), at. ¶ 5.) The Bronx Defenders regularly expends staff resources vindicating the property rights of its clients and attempting to retrieve Personal Property held by the City where the underlying criminal case is terminated but no new showing has been made to justify the retention. (Am. Cmplt. ¶ 74; Kovel Decl. ¶¶ 7-8.) The Bronx Division of the NYPD Property Clerk itself regularly refers property owners to The Bronx Defenders for assistance when it has refused to return their property. (Am. Cmplt. ¶ 77.) Because it expends considerable resources trying to obtain the return of Arrest Evidence and Forfeiture property that the City has unlawfully withheld from its clients and

others who are referred are request help, The Bronx Defenders has been forced to divert resources from its core mission. (Am. Cmplt. ¶ 78; Kovel Decl. ¶ 9.)

        D.      <u>The Allegations of the Class Complaint</u>

The Amended Complaint alleges that the City's absolute insistence on a DA Release, even where cases are terminated, violates the United States Constitution. Specifically, the Amended Complaint alleges that the City—as the holder of the property—has an obligation under the Fourth and Fourteenth Amendments to establish a new basis for its retention after the underlying criminal case related to the property is over, or to return it to its owner. To remedy these ongoing constitutional violations and ensure the City's rules comply with the controlling constitutional standards, Named Plaintiffs have brought this case on their own behalf and as a proposed class action on behalf of other similarly situated individuals who are likewise harmed by the City's conduct.

## ARGUMENT

Plaintiffs seek certification of the following class:

> individuals who have been or will be unable to secure the release from the NYPD Property Clerk of Personal Property seized in connection with an arrest where (i) the individual named on the voucher for the property can no longer be tried on any charge that was the original basis for the arrest, and (ii) the City has made no showing of any continued basis to retain the property.

As the class meets all of the requirements of Federal Rule of Civil Procedure 23(a) and Rule 23(b)(2), Plaintiffs respectfully submit that it should be certified by the Court.

**I.**    **The Proposed Class Satisfies Rule 23(a).**

Rule 23(a) sets forth four prerequisites to maintaining a class action: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (internal quotation marks omitted). The district court should apply a "preponderance of the evidence" standard in "resolving factual disputes relevant to each of the Rule 23 requirements" and "should not assess any aspect of the merits unrelated to a Rule 23 requirement." *Id.* at 160-61. Moreover, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility . . . ." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

The Named Plaintiffs here challenge a specific policy and practice of the City that deprives individuals seeking to recover property of due process. As set forth below, the proposed class readily meets the Rule 23(a) requirements.

    A.    <u>The proposed class is sufficiently numerous that joinder is impracticable</u>

Numerosity requires that "the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). This requirement "does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Floyd*, 283 F.R.D. at 161 (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. MerckMedco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007)). In the Second Circuit, there is a presumption that the numerosity element is satisfied if there are at least forty class members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also Floyd*, 283 F.R.D. at 172 (finding numerosity requirement met because "[t]he preponderance of the evidence indicates that the proposed class and subclass easily exceed forty members"); *Stinson v. City of New York*, 282 F.R.D. 360, 369

(S.D.N.Y. 2012) (finding numerosity requirement met because "the proposed class like[ly] exceeds forty members"). Plaintiffs may "reasonably estimate" the number of class members, and are not required to "show the exact number." *See, e.g.*, *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993); *Williams v. Conway*, No. 9:15-CV-427, 2016 WL 65064, at *2 (N.D.N.Y. Jan. 4, 2016).

Here, the proposed class includes at a minimum hundreds of individuals, and likely many more. Each year, The Bronx Defenders handles approximately 500 matters relating to retrieving clients' property taken pursuant to an arrest. (Kovel Decl. ¶ 8.) Scores of these cases involve situations where the NYPD Property Clerk refused to return Personal Property after a case was over without a DA Release and without any new showing for why continued retention was justified. (Rockoff Decl. ¶ 2, 10-14.) Indeed, DA Offices throughout the City of New York, including at a minimum the DA Offices in The Bronx and Queens, have systematically failed to comply with the fifteen-day deadline in the City's rules for providing DA Releases and regularly let requests for DA Releases linger indefinitely. (Rockoff Decl. ¶¶ 11-14; Pope Decl. ¶¶ 6-10.) In these cases, clients are unable to retrieve their Personal Property without resort to prohibitively expensive legal process. (Pope Decl. ¶¶ 11-12.) When the Bronx Division of the NYPD Property Clerk refuses to return claimant property, it regularly refers claimants to The Bronx Defenders for assistance. (Am. Cmplt. ¶ 77.)

Notably, The Bronx Defenders represents just 40% of indigent clients accused of crimes in Bronx County, New York, which itself accounts for only 25% of the arrests in New York City

11

each year.[4] (Kovel Decl. ¶ 5.) Even conservatively extrapolating from The Bronx Defenders' experience indicates that many hundreds if not thousands of individuals fall into the proposed class. Indeed, from 2013-2015, the NYPD arrested over 50,000 individuals in connection with felony drug charges.[5] NYPD commonly takes personal property as Arrest Evidence in felony drug cases. (Wasserman Decl. ¶ 4.) Yet a significant proportion of the individuals charged in these cases never succeed in securing the return of their Personal Property from the City even when their cases have terminated and no forfeiture actions have been filed. (Declaration of Adam Shoop, June 6, 2016 ("Shoop Decl."), at ¶ 10.) Analysis of NYPD accounting documents provided to The Bronx Defenders through a Freedom of Information Law request reveal that every year, approximately $5 million in unclaimed cash seized pursuant to an arrest is counted as revenue toward the NYPD budget. (Shoop Decl. ¶¶ 9-11.) For all these reasons, Rule 23(a)'s numerosity requirement is satisfied.

      B.    <u>There are questions of law and fact common to the proposed class.</u>

Plaintiffs must satisfy the commonality requirement of Rule 23(a) by "demonstrat[ing] that the class members have suffered the same injury." *See Wal-Mart Stores, Inc.*, 564 U.S. at 350. Adjudication of this injury must be "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 342. Where "a plaintiff alleges injury from a common policy, the commonality requirement is met." *Romano v. SLS Residential Inc.*, 246 F.R.D. 432, 444

---

[4] *See* New York State Division of Criminal Justice Services, Adult Arrests 2006-2015 (NYC), *available at* http://www.criminaljustice.ny.gov/crimnet/ojsa/arrests/index.htm.
[5] *See* New York State Division of Criminal Justice Services, Adult Arrests 2006-2015 (NYC), *available at* http://www.criminaljustice.ny.gov/crimnet/ojsa/arrests/index.htm.

(S.D.N.Y. 2007); *see also Brown v. Kelly*, 609 F.3d 467, 468 (2d Cir. 2010) ("[W]here plaintiffs were allegedly aggrieved by a single policy of the defendants, and there is strong commonality of the violation and the harm, this is precisely the type of situation for which the class action device is suited.") (internal quotation marks and citation omitted).

The commonality requirement is readily met here because the class members all challenge a specific City policy and practice—refusing to return Personal Property originally taken in connection with an arrest, even when the case is over and the City has made no new showing regarding why the property cannot be returned. Class certification should not be denied for want of commonality when plaintiffs challenge an allegedly unconstitutional practice, even if such practice affects class members in different ways. *See Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of New York & New Jersey*, 698 F.2d 150, 153 (2d Cir. 1983) ("[T]he free speech claim can be litigated without application of *Mt. Healthy's* procedure for determining whether any one officer is entitled to a promotion. [*See Mt. Healthy City School Board v. Doyle*, 429 U.S. 274 (1977).] If the plaintiff can prove that the Port Authority suppressed protected expression by denying or threatening to deny promotion, some relief would be warranted."). This targeted focus is akin to the class certified by this court in *Ligon v. City of New York*, 288 F.R.D. 72 (S.D.N.Y. 2013), which consisted of individuals who had been or were at risk of being stopped outdoors without justification on suspicion of criminal trespassing inside of Clean Halls buildings in the Bronx. In *Ligon*, because "plaintiffs and the putative class members were allegedly subjected to the same unlawful conduct by NYPD officers under the auspices of a single NYPD program," the plaintiffs were found to have "readily [met]" the commonality requirement. *Ligon*, 288 at 82.

13

Here, the class members also "have suffered the same injury" and have "common contention[s]," and the Court can resolve the "issue[s] that [are] central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. In particular, class members pose common questions of facts and law that are dispositive of the issues in this case, such as:

- Does the City have a policy of absolute refusal to release Personal Property without a DA Release, even after a DA's Office has not responded to a claimant's demand?

- Do some or all of the District Attorney's Offices of the five boroughs in the City routinely fail to comply with the fifteen-day deadline in the City's rules for providing DA Releases?

- Do RCNY §§ 12-34–12-36 violate class members' constitutional rights under the Fourth and Fourteenth amendments of the U.S. Constitution because they improperly place the burden on property owners to produce a DA Release, even when (i) the individual named on the voucher for the property can no longer be tried on any charge that was the original basis for the arrest, and (ii) the City has made no showing of any continued basis to retain the property?

- Does the City's strict application of RCNY §§ 12-34–12-36, including its alleged absolute refusal to release Personal Property without a DA Release, violate class members' constitutional rights under the Fourth and Fourteenth amendments of the U.S. Constitution where (i) the individual named on the voucher for the property can no longer be tried on any charge that was the original basis for the arrest, and (ii) the City has made no showing of any continued basis to retain the property?

C. The Named Plaintiffs' claims are typical of the proposed class.

Rule 23(a)(3)'s typicality requirement is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *See Kelen v. World Financial Network Nat. Bank*, 295 F.R.D. 87, 92 (S.D.N.Y. 2013) (citing *Marisol A. v. Guiliani*, 126 F.3d 372, 376 (2d Cir. 1997)). Typicality ensures that "maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *See Sykes v. Mel S. Harris and Assoc.*, 780 F.3d 70, 80 (2d Cir. 2015) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n. 5 (2011)). Typicality may be satisfied where "injuries derive from a unitary course of conduct by a single system." *See Floyd v. City of New York*, 283 F.R.D. 153, 175 (S.D.N.Y. 2012) (finding complaints of four named black plaintiffs who sought to enjoin city's allegedly unlawful stop and frisk practice were typical of the class of people who were unlawfully stopped by city police officers, or those who might be stopped by officers on basis of being black or Latino); *see also Marisol A.*, 126 F.3d at 377 (finding typicality amongst eleven named plaintiffs and a class of children who were the legal responsibility of the child welfare system yet were deprived of services of the New York City child welfare system). Typicality may also be established when "all members of the class would benefit from the named plaintiffs' action." *Gulino v. Bd. of Educ. of City Sch. Dist. of New York,* 201 F.R.D. 326, 332 (S.D.N.Y. 2001) (citations omitted).

Typicality does not require that the representative claims be identical to those of the class members, and factual variations among plaintiffs may exist. When the same unlawful conduct harmed both the named plaintiff and the class sought to be represented, typicality "is usually met irrespective of minor variations in the fact patterns underlying the individual claims." *Robidoux*

*v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) (finding typicality requirement satisfied where three recipients of Vermont's public assistance sought to represent a class of persons whose applications for public assistance had been unlawfully delayed by the Vermont Department of Social Welfare). *See also Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("[I]t is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification." (citations omitted)). This "is 'particularly true with respect to . . . (b)(2) certification.'" *Charron v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221, 232 (S.D.N.Y. 2010) (quoting *Brown v. Kelly*, 244 F.R.D. 228, 232 (S.D.N.Y. 2007)). That is because there is "no need for *individualized* determinations of the propriety of injunctive relief" when plaintiffs request such relief against a defendant "engaging in a common course of conduct toward them." *Id.* (quoting *Brown*, 244 F.R.D. at 232) (emphasis in original).

      Here, the Named Plaintiffs' claims are typical of the class as a whole because, first, their claims arise from the same course of conduct by the City—namely, that the City has denied them due process of law and subjected them to the unreasonable seizure of their property by (i) improperly placing the burden on property owners to produce a DA Release once the underlying criminal proceeding relevant to their property has terminated, and (ii) refusing to release Personal Property without a DA Release in such circumstances. Second, Named Plaintiffs' claims are typical of the class as a whole because they seek injunctive and declaratory relief from which all class members will benefit in common.

      D.     <u>The Named Plaintiffs will fairly and adequately protect the proposed class.</u>

      Plaintiffs and their counsel satisfy the adequacy requirement. Courts make two inquiries into whether the class representatives and their counsel will adequately protect the class. First,

courts assess whether the interests of the named plaintiffs may be "antagonistic" to the interests of other class members. *Floyd*, 283 F.R.D. at 161 (quoting *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)). In so doing, the court seeks to unearth potential conflicts of interest between the class representatives and the class they purport to represent. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). However, "[a] conflict or potential conflict alone will not … necessarily defeat class certification." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) (citation omitted). Rather, the conflict must be "fundamental." *Id.* Second, courts assess whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Floyd*, 283 F.R.D. at 161 (quoting *Baffa*, 222 F.3d at 60).

Here, the Named Plaintiffs are all challenging the same policy and practice and share a common interest in ensuring the City provides due process to claimants seeking the return of Personal Property taken in connection with an arrest. The Named Plaintiffs will fully protect the interests of the entire class and do not suffer from any internal conflict.

Furthermore, counsel for the class representatives are more than qualified to represent the class adequately as they have extensive experience litigating class action and civil rights cases.[6]

**II.    The proposed class is satisfies Rule 23(b)(2).**

A class action is maintainable pursuant to Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Civil rights cases" are "prime examples" of Rule 23(b)(2) class actions. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

---

[6] *See* Declaration of Eric Brenner, June 7, 2016 ("Brenner Decl."); Kovel Decl.

Maintainability under Rule 23(b)(2) "is almost automatically satisfied in actions primarily seeking injunctive relief." *See Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). This is a quintessential Rule 23(b)(2) class, as (a) all class members have been harmed by the same course of conduct; and (b) all class members seek reprieve from this harm via injunctive and declaratory relief that will benefit the class as a whole.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court certify the proposed class pursuant to Rules 23(a) and 23(b)(2), and appoint The Bronx Defenders and Boies, Schiller & Flexner LLP as class counsel pursuant to Rule 23(g).

Date:  New York, NY
       June 7, 2016


By: /s/ Eric Brenner

BOIES, SCHILLER & FLEXNER LLP
Eric J. Brenner
Zachary J. F. Kolodin
575 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
ebrenner@bsfllp.com
zkolodin@bsfllp.com


THE BRONX DEFENDERS
Johanna B. Steinberg
Mariana (Molly) Kovel
Adam N. Shoop
360 East 161st Street
Bronx, New York 10451
(718) 838-7878

        johannas@bronxdefenders.org
        mollyk@bronxdefenders.org
        adams@bronxdefenders.org

        *Attorneys for Plaintiffs and the Proposed Class*