UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTOR ENCARNACION, KALEB HAGOS, KENNETH CLAVASQUIN, and THE BRONX DEFENDERS, individually and on behalf of a class of all others similarly situated;<br><br>        Plaintiffs,<br><br>– against –<br><br>THE CITY OF NEW YORK<br><br>        Defendant. | 16-cv-156 (DLC) |

**DECLARATION OF LISA SCHREIBERSDORF IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Lisa Schreibersdorf declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am the Founder of Brooklyn Defender Services ("BDS") and have served as Executive Director since its inception.

2. BDS is a public defender organization that represents 45,000 people each year in the criminal justice system who cannot afford an attorney. Our staff consists of specialized attorneys, social workers, investigators, paralegals and administrative staff who are experts in their individual fields.

3. As part of our services to our clients, BDS attorneys regularly and routinely advise and assist clients trying to retrieve property seized from them by the New York Police Department ("NYPD") pursuant to their arrest.

4. In addition to cell phones and other non-contraband personal property, NYPD routinely seizes cash from the people it arrests, including cash that is physically located in the arrestee's residence but not on their person. Commonly, this cash is the only money that a family has, and its retention by NYPD can lead to eviction and other dire consequences for the families of those arrested.

5. Our clients' cell phones are critical for their personal and professional lives, and replacing a cell phone is a significant expense. Cell phones taken at arrest are regularly designated as Arrest Evidence even when clearly unrelated to the offense alleged and even though they are virtually never used as evidence in a trial. In fact, NYPD rarely if ever takes the steps that would be required to actually search a cell phone for use in a criminal trial, such as requesting a warrant. Instead, NYPD simply refuses to return the cell phone, as they would for property vouchered for "safekeeping", until the termination of the criminal case, depriving our clients of a critical piece of personal property, in service of no evidentiary value whatsoever.

6. The NYPD Property Clerk ("Property Clerk"), which retains property seized pursuant to an arrest, will not release property that has been designated as either Arrest Evidence or Forfeiture without a District Attorney Release ("DA Release") – a note addressed to the Property Clerk which states that that the property is no longer needed as evidence in a criminal case.

7. Most of our clients whose property is taken do not receive any information about how to recover their property from the City of New York ("City"). Many do not even receive a voucher at arrest and thus have no notice if their property is being held for safekeeping or may be subject to forfeiture. When a client returns to the precinct after arraignment to

retrieve their property they are informed for the first time that they must "talk to the DA."

8. For obvious reasons, NYPD would have an easier time communicating directly with the District Attorney about the continued necessity of property retention than does an unrepresented criminal defendant attempting to act as messenger between the two City offices.

9. The requirement that property owners obtain a DA Release is a source of unnecessary delay and confusion for our clients at any stage of the process, but this requirement presents an unfair burden when applied to those whose criminal cases have been dismissed. Once a proceeding has ended, "preserving evidence" is no longer a justification for continued deprivation of property and the District Attorney's consent is no longer relevant. The burden should be on the District Attorney's Office to make a new showing that entitles the City of New York to retain the property.

10. In Brooklyn, property claimants may request a DA Release from the assigned Assistant District Attorney ("ADA") through their attorney, or in person (or by authorized representative) at the DA property window on the Fourth Floor of the Criminal Court building.

11. When our clients request a DA Release prior to the termination of their case, their requests are generally ignored if made to the assigned ADA directly, through counsel, or denied without written explanation if addressed to the property window. When clients request a release from the property window, the clerk at the DA window attempts to contact the ADA assigned to the case. If the ADA refuses to grant the release or fails to

respond the client is simply told the request was "denied because the property is needed as evidence."

12. When our clients, through their attorneys, request a DA Release after the termination of their case, the ADAs generally remain extremely unresponsive to defense attorney or client requests. If the request is made directly to the property window the clerk will confirm the case has ended and provide a written DA release. Although the Rules of the City of New York require that a refusal to grant a DA Release be given in writing, the Kings County District Attorney virtually never issues written refusals.

13. Many of our clients are deterred from even making a demand for their property after their case is terminated because the District Attorney has ignored or denied without explanation previous requests for a DA Release. Other clients are deterred from making a demand because of the requirement that property claimants travel to Criminal Court between the hours of 9:00 AM and 4:00 PM on a weekday – a period during which many of our clients are unable to take off from work—both to request a release and to return to find out whether or not it was granted..

14. As part of our services to our clients, BDS frequently requests DA releases from the assigned ADA and sends its attorneys to make requests for DA Releases or demands upon the Property Clerk on behalf of our clients.

15. The process of obtaining DA Releases for our clients is a burden on Brooklyn Defender Services as an organization.

16. Commonly, multiple requests to the ADA, and multiple trips to the DA Release window and Property Clerk, are required.

17. Even if the attorney making the demand is a court-appointed defense attorney for the property claimant, the attorney must still obtain a notarized authorization to make a valid demand.

Dated: June 7, 2016
       Bronx, New York

*Lisa Schreibersdorf*

Lisa Schreibersdorf, Esq.
Executive Director
BROOKLYN DEFENDER SERVICES
177 Livingston Street, 7th Floor
Brooklyn, NY 11201