**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

VICTOR ENCARNACION, KALEB HAGOS,
KENNETH CLAVASQUIN, and
THE BRONX DEFENDERS, individually and
on behalf of a class of all others similarly
situated,

                     Plaintiffs,

&ndash; against &ndash;

THE CITY OF NEW YORK,

                     Defendant.

16-cv-156 (DLC)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO
ENFORCE THE SO-ORDERED SETTLEMENT AGREEMENT**

## Table of Contents

Introduction ................................................................................................................. 1

Procedural Posture ..................................................................................................... 2

Factual Background .................................................................................................... 4

Argument .................................................................................................................... 10

Conclusion .................................................................................................................. 13

## Table of Authorities

**Cases**                                                                                                      <u>Page(s)</u>

*Alexandre v. Cortes*, 140 F.3d 406 (2d Cir. 1998)……………………………………………11

*Baez v. New York City Hous. Auth.*, No. 13CV8916, 2015 WL 9809872
    (S.D.N.Y. Dec. 15, 2015) …………………………………………….…...…11, 13

*Berger v. Heckler,* 771 F.2d 1556, 1568 (2d Cir.1985)……………………….……...…10, 11, 13

*Brown v. Plata*, 563 U.S. 493 (2011)…………………………………….……...…………10

*Butler v. Castro*, 896 F.2d 698 (2d Cir. 1990)…………………………………....…….11

*Frew ex rel. Frew v. Hawkins*, 540 U.S. 431 (2004) …………………………………..10, 11

*Roe v. Hogan*, No. CV H89-570, 2005 WL 8167655 (D. Conn. Sept. 30, 2005)………...……..11

*United States v. ITT Cont'l Baking Co.*, 420 U.S. 223 (1975)………………….……………11

**Other Authorities**

38 R.C.N.Y. 12-32………………………………………………………………………..passim

**Introduction**

By this motion, Plaintiffs seek to enforce the court-ordered settlement agreement in this action ("Settlement") because Defendant has persistently failed to provide people with timely and complete vouchers following the seizure of personal property—which is a failure to comply with a core Settlement term designed to protect Plaintiffs' fundamental constitutional rights. Plaintiffs repeatedly brought evidence of compliance failures to Defendant's attention and proposed many reasonable remedial actions, but Defendant refused to meaningfully respond. With the Settlement set to expire, it appears Defendant was simply waiting out the clock. Plaintiffs seek an order narrowly tailored to ensure the Settlement is implemented.

Under Paragraph 16 of the Settlement, the New York City Police Department ("NYPD") is required to "implement policies and procedures, training, supervision, monitoring, and discipline sufficient to ensure" that the NYPD provides timely and complete property vouchers. ECF No. 80, ¶ 16. This provision is central to the Settlement and strikes at the heart of the litigation: Without proper and effective voucher procedures, the NYPD will continue to violate Plaintiffs' constitutional rights and cause the precise harms that Plaintiffs brought this case to vanquish. Over the course of the Settlement, Defendant has denied Plaintiffs' requests for evidence of compliance. Yet the evidence Plaintiffs have gathered has raised a significant concern that the NYPD is not providing vouchers as required. The parties twice agreed to extend the Settlement term, but the extensions did not resolve the compliance concerns because the only remedial actions Defendant took were insufficient. Now, Defendant has refused to extend the Settlement again, despite conceding that it does not monitor voucher delivery—and therefore has no way to demonstrate compliance.

A property voucher is a crucial document that provides people with both a record that their property was seized and instructions on how to navigate the complex process of retrieving it. Failure to provide vouchers crucial for retrieving personal property renders ineffective the other reforms achieved under the Settlement and results in continued harms to Plaintiffs— including, *inter alia*, homelessness, job loss, organizational burdens, and exposure to viral infection from the coronavirus pandemic. Therefore, pursuant to the process agreed upon in the Settlement, Plaintiffs respectfully request that the Court extend the Settlement for one year and order Defendant to demonstrate compliance with Paragraph 16 in that period.

**Procedural Posture**

Plaintiffs brought this putative class action in 2016 alleging that the City had a policy and practice of refusing to return personal property seized by the NYPD at the time of arrest due to a failure to maintain and abide by appropriate property retrieval policies. ECF No. 31 (Amended Complaint). Plaintiffs asserted claims under the Due Process Clause and the Fourth Amendment for the deprivation of personal property without appropriate justification or sufficient process for people to get their property back, and they sought declaratory and injunctive relief. *Id*. On June 8, 2016, Plaintiffs moved for class certification. ECF No. 33.

On July 25, 2016, rather than contest the allegations in Plaintiffs' pleadings or oppose class certification, Defendant, together with Plaintiffs, sought to stay the action in an effort to settle the matter, ECF No. 53, and these efforts ultimately resulted in the so-ordered settlement that is the subject of this motion. ECF No. 80. The Settlement sets out, *inter alia*, detailed reforms the NYPD must implement to remedy the property seizure and retrieval problems challenged by this action. The first substantive section of the Settlement sets out the NYPD's obligations, and the first of those obligations is Paragraph 16, which states:

2

> 16. The NYPD shall follow practices consistent with RCNY § 12-32 to provide an individual with a Voucher for all property seized pursuant to an arrest no later than the time of arraignment, or alongside Desk Appearance Ticket ("DAT") paperwork when a DAT is issued, absent extraordinary circumstances. The Voucher may be provided directly to the individual or to the individual by delivery to the individual's attorney. The NYPD shall implement policies and procedures, training, supervision, monitoring, and discipline sufficient to ensure compliance with RCNY § 12-32.

As indicated, this provision incorporates by reference Title 38 of the Rules of the City of New York, § 12-32, which provides vouchering procedures governing the taking or obtaining of non-contraband property from a person's possession at the time of arrest, including that the police shall issue a voucher containing a list of property taken, along with a separate sheet attached to the voucher providing notice of the procedures for obtaining return of the property.

The Settlement was ordered by this Court on February 12, 2018. It provided that the Court would retain jurisdiction "to hear and resolve disputes arising under or related to this Stipulation and to otherwise enforce the terms of this Stipulation for a period of two years following the Effective Date of this Stipulation." ECF No. 80, ¶ 66. The parties subsequently agreed—and the Court ordered—for the two year sunset period to be extended twice, for a total of 8.5 months. ECF Nos. 91, 93.[1] The Settlement is set to sunset on October 31, 2020. *Id.*

The Settlement provides for recourse under the stipulation as follows: "During the time period in which this Court retains jurisdiction over this Stipulation… any dispute arising out of or related to this Stipulation concerning any asserted failure by NYPD … to comply with any provision of this Stipulation, or a request for a modification to this Stipulation by a Settling Institutional Party, may be submitted to this Court after following the procedure set forth in

---

[1] As part of the agreement, the Office of the Bronx District Attorney voluntarily intervened in the action solely for the purpose of the settlement agreement because remedying some of the harms at issue required coordination with and actions by their office. ECF No. 80, ¶ 28. During the Settlement's original two year term, the Bronx DA achieved substantial compliance with the required terms. Therefore, when the parties agreed to extend the obligations of the agreement as to the NYPD, the Bronx DA was excused. ECF No. 91.

paragraphs 48-51. This Court may adjudicate any such dispute and grant all appropriate relief."
ECF No. 80, ¶ 47.

## Factual Background

During the course of the Settlement, Defendant has taken steps to fulfill many of its other
obligations under the Settlement but has persistently failed to comply with Paragraph 16
regarding voucher delivery.

In 2019, Plaintiffs sought to assess voucher delivery rates in order to determine the extent
to which Defendant was complying with Paragraph 16. Plaintiffs initially sought this information
from Defendant, but it declined to provide any data on compliance. Declaration of Niji Jain
("Jain Decl.") at ¶ 4. Plaintiffs then endeavored to investigate and assess this on their own with
the information and resources available to them. They developed and fielded a survey of clients
of The Bronx Defenders during arraignments, to determine whether individuals whose property
was seized during an arrest had received a voucher by the time they were arraigned. *Id.* at ¶ 5 and
Exhibit A (survey form). This survey, fielded over a two week period in January-February 2019,
indicated that the NYPD was failing to consistently deliver vouchers. From over 100 survey
responses from individuals who had property seized during their arrest, 38% did not receive a
voucher for seized property, and another 10% received a voucher that lacked the required notice
provisions, for a total of 48% that did not receive adequate vouchers. *Id.* Plaintiffs identified
evidence of failures on three counts: (1) failure to create a voucher, meaning the NYPD seized an
individual's property and failed to document the seizure in any way; (2) failure to provide a
voucher, despite the fact that the NYPD created the voucher and it was available in the database
where vouchers are maintained; and (3) failure to provide a complete voucher that includes the
required notice provision page with instructions on how to retrieve property that has been seized.

*Id.* at ¶ 7; Declaration of Adam Shoop ("Shoop Decl.") at ¶¶ 10-11 and Exhibits A-B (sample voucher and notice provision pages).

Several months later, prior to the original February 2020 sunset date of the Settlement, Plaintiffs conducted a second survey of voucher delivery in October-November 2019. This second survey suggested that compliance was even worse: of the 59 people surveyed who had property seized during their arrest, 34% did not receive vouchers at all, and 22% received partial vouchers (meaning that either they only received vouchers for some of their property, or all the items were vouchered, but the required notice/instructions page was missing). In other words, 56% of people—this time more than half—did not receive a complete voucher.[2] Jain Decl. at ¶ 9.

Throughout this time, the parties engaged in discussions concerning Settlement implementation, and Plaintiffs shared the results of their surveys with the NYPD as they were completed. *Id.* at ¶¶ 6, 11. In light of Defendant's obligation under the Settlement to adopt "policies and procedures, training, supervision, monitoring, and discipline sufficient to ensure compliance" with the voucher obligations in Paragraph 16, Plaintiffs proposed a variety of reforms to improve voucher delivery. *Id.* at ¶ 11 and Exhibit B (letter from Plaintiffs to Defendant proposing remedies). Defendant declined to consider or implement additional procedures, monitoring, or discipline; instead, when confronted with these instances where people did not receive vouchers, the NYPD passed off its responsibility and suggested that people file Internal Affairs Bureau complaints about individual police officers. *Id.* at ¶¶ 12-13.

---

[2] Although the City has previously complained about the methodology of Plaintiffs' surveys, Plaintiffs have asked the City what data would be acceptable and they have refused to offer an alternative. Jain Decl. at ¶ 6. Moreover, Plaintiffs have long asked Defendant to share data around voucher delivery rates since this data is uniquely in the City's possession; they have never provided such data, and indeed, at a recent meeting, the NYPD confirmed that they have "not really been monitoring compliance because [they] don't really have a way to." *Id.* at ¶ 15. In light of Plaintiffs' data and examples suggesting significant non-compliance with a central provision of the Settlement, Defendant should not be able to hide behind blanket denials.

Defendant did, however, agree to extend the Settlement agreement, extending the sunset to June 30, 2020. ECF No. 91. The first extension was agreed to in part because the NYPD took the position that its voucher compliance would be remedied by the introduction of a new computer system for property vouchers, which was expected to be rolled out in the coming months. *Id*. at ¶ 16. Based on Defendant's explanation that this system would provide additional safeguards to ensure the issuance and timely service of vouchers, Plaintiffs believed it could in fact bring the NYPD into compliance with Paragraph 16, but that time would be needed once the system was up and running to confirm it was successful. *Id*. at ¶ 17. An extension without other obligations therefore seemed sufficient to advance implementation of Paragraph 16.

A few months later, the coronavirus pandemic took hold of New York City, causing disruptions to the parties' abilities to implement reforms and assess compliance. Most importantly, the NYPD put the development of the new property voucher software "on hold" indefinitely; it will not be introduced in the near future. *Id*. at ¶ 18. The pandemic also limited Plaintiffs' ability to assess the NYPD's compliance. *Id*. at ¶ 19. As a result, "due to the COVID-19 pandemic and related disruptions to court and office operations," the parties again agreed to extend the term of the Settlement "to further extend the time frame for enforcement of the obligations of the parties." ECF No. 93 (extending the Settlement to October 31, 2020).

Because of the constraints imposed by the pandemic, Plaintiffs' counsel has been unable to conduct another survey to assess the NYPD's compliance with Paragraph 16. Jain Decl. at ¶ 19 (explaining that the physical offices of The Bronx Defenders have been closed, arraignments are being conducted virtually such that Plaintiffs' counsel would have far more difficulty conducting the survey, and for a period, the volume of arrests was down, which greatly constricted the pool that could be surveyed). However, recent anecdotes of people navigating the

property retrieval process show that the NYPD's failure to create and provide vouchers when
they seize property continues to harm people:

- During an arrest in the spring, the NYPD seized all of an individual's personal property,
  including his house keys, but when he attempted to pick up the house keys, the property
  clerk did not have a voucher on file for the keys, and no one had any idea where they
  were. As a result, the individual was homeless for four days until he was able to get his
  locks changed. Shoop Decl. at ¶ 13.

- Also this spring, a woman's purse was seized by the NYPD, along with her expensive
  iPhone and related accessories, but she was unable to initiate the property retrieval
  process without a copy of her voucher, and the property clerk could not find a voucher
  for any of her property. Her advocates escalated the situation to senior NYPD staff, and
  after further investigation, no one was able to locate either a voucher or the purse, cell
  phone, or headphones. *Id*.

- When people whose cars are seized do not receive a voucher, they are bounced around
  from the precinct to the NYPD's auto pounds to the property clerk to the DA's office,
  trying to figure out how to get their car back. Without the voucher, they encounter
  confusion and delays because the procedure to get the car back depends on how the car
  was categorized by the NYPD, and the only way to figure that out is by looking at the
  voucher. Shoop Decl. at ¶ 15.

- Following the police brutality protests across New York City this summer, people who
  were arrested had their personal property seized from them without being provided a
  voucher. Some of them then had to make in-person trips on successive days to various

property offices and precincts, where they were turned away without any information about where their property might be or how to get it back. *Id*.

- A young person was arrested this summer and his iPhone was seized. Without the voucher, the his legal advocate could not determine on what basis the phone was taken and therefore could not advise on the necessary steps to retrieve the phone. Moreover, the only form of photo identification the person possessed was a school ID, which the NYPD property clerk office will not accept to provide a copy of the voucher. *Id*.

- In another case this fall, the arresting officers took someone's cellphone and failed to provide a voucher. After he was arraigned, he went back to the precinct the following day to retrieve his phone but the precinct staff declined to return it. Instead, they told him he would get his phone on his next court appearance, scheduled more than a month later. In fact, this information was inaccurate; there is no procedure for either the district attorney or NYPD to return property at a court appearance. Without the property retrieval notices and instructions that are supposed to be provided as part of the voucher, the client had no way to learn how to get back his phone, and he was further confused by misinformation provided by the police at the precinct. *Id*.

When clients do not receive a voucher, they experience a range of harms. They are often confused about where to go to get their property back and often get bounced around from different offices and agencies as a result. People who are trying to navigate this process pro se often become overwhelmed and give up. All of these roadblocks delay and sometimes entirely prevent people from getting their belongings back. *Id*. at ¶ 17.

Problems with property vouchers take on heightened impact during the pandemic. Each additional trip to the property clerk's office is another needless risk of exposure, both while in

the agency's office and while in transit. Moreover, people are facing particular economic hardship right now, where being without a work phone or car for even an extra week can be the difference between a family going hungry. A tablet or laptop someone cannot get back could interrupt their child's virtual schooling. *Id*. at ¶ 18.

These ongoing voucher deficiencies also impose a burden on organizations that assist people with property retrieval. In the past year alone, The Bronx Defenders has handled hundreds of cases helping clients navigate the property retrieval process, despite the fact that in many cases, it should be possible for someone to get back their belongings pro se—if they receive a complete voucher and the process runs as it is supposed to. *Id*. at ¶ 19. These efforts involve ongoing, extensive, time consuming work by Bronx Defenders staff. *Id.* Moreover, because of the NYPD's refusal to collect and share compliance data that is uniquely in its possession, The Bronx Defenders has had to take on the time and burden of fielding and analyzing the voucher surveys of its clients. Jain Decl. at ¶ 10.

In light of these limitations and ongoing problems, Plaintiffs requested that Defendant again agree to extend the Settlement to give the parties time to continue negotiating and collaborating toward a solution, but Defendant refused another extension, despite the fact that it had recently informed Plaintiffs' counsel that the NYPD has "not really been monitoring compliance because [they] don't really have a way to." *Id*. at ¶¶ 15, 20.

Without Court intervention to extend the agreement term and require Defendants to demonstrate compliance, the Settlement will terminate without the NYPD having had to fulfill its primary obligations under the agreement.

### Argument

The City has failed for nearly three years to meet its obligations under Paragraph 16 on voucher delivery, and an extension of the sunset and order to show compliance with this core provision is necessary and appropriate.

As a threshold matter, the Court has jurisdiction to hear this motion. The language of the Settlement explicitly permits the Court to adjudicate disputes and order any corrective action it sees fit to ensure the NYPD's compliance: "any dispute arising out of or related to this Stipulation concerning any asserted failure by NYPD … to comply with any provision of this Stipulation, or a request for a modification to this Stipulation by a Settling Institutional Party, may be submitted to this Court after following the procedure set forth in paragraphs 48-51. This Court may adjudicate any such dispute and grant all appropriate relief." ECF No. 80, ¶ 47. Even beyond these express terms, moreover, courts in this circuit have recognized the general equitable authority to enforce so-ordered settlements in federal civil rights cases like this one and to grant injunctive relief to ensure compliance. "[W]here the performance of one party threatens to frustrate the purpose of the decree," the Court should enforce the terms of its order. *Berger v. Heckler,* 771 F.2d 1556, 1568 (2d Cir.1985). ("A court has an affirmative duty to protect the integrity of its decree."). This equitable authority is broad and flexible. *See Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 441 (2004) (explaining the federal court's equitable powers to order injunctive relief to bring a state actor into compliance with a consent decree in a Section 1983 lawsuit). *See also Brown v. Plata*, 563 U.S. 493, 538 (2011) ("Courts have substantial flexibility when making . . . judgments" about remedial measures in actions seeking injunctive relief to redress constitutional violations). Moreover, "[a] defendant who has obtained the benefits of a consent decree—not the least of which is the termination of the litigation—cannot then be permitted to ignore such affirmative obligations as were imposed by the decree." *Berger,* 771

F.2d at 1568; *Baez v. New York City Hous. Auth.*, No. 13CV8916, 2015 WL 9809872, at *2
(S.D.N.Y. Dec. 15, 2015). When a court-ordered settlement agreement is violated, the remedies
for such a violation may include civil contempt, declaratory relief, decree amendment, injunctive
enforcement, and financial penalties. *Roe v. Hogan*, No. CV H89-570 (PCD), 2005 WL
8167655, at *2 (D. Conn. Sept. 30, 2005) (citing *Hawkins*, 540 U.S. at 440-441; *Heckler*, 771
F.2d at 1569; *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 243 (1975)).

 Plaintiffs brought this action to vindicate fundamental constitutional rights. As the
Second Circuit Court of Appeals has repeatedly recognized, a timely and complete voucher is
necessary for a property seizure to comport with due process under the Fourteenth Amendment.
*See Butler v. Castro*, 896 F.2d 698, 700-03 (2d Cir. 1990) (reversing district court's grant of
motion to dismiss procedural due process claims where the plaintiff alleged that he was not
provided with a voucher and only long after his arrest was his attorney able to obtain a copy of
the front side of the voucher, because the back side of the voucher was necessary to provide
notice of recovery procedures); *Alexandre v. Cortes*, 140 F.3d 406 (2d Cir. 1998) (vacating
district court's grant of motion for summary judgment because the district court failed to
consider the import of the voucher on the property owner's ability to retrieve his property).

 Defendant has persistently failed to provide vouchers, which constitutes a violation of the
exact rights sought to be vindicated by this action and a failure to meet a core promise
underpinning Plaintiffs' agreement to settle. Moreover, despite the fact that information about
voucher delivery is uniquely in the NYPD's possession, Defendant has refused to adopt any
monitoring or tracking to assess its own performance on this obligation. Jain Decl. at ¶ 4, 15.
This conduct undermines any other efforts it may have taken: it is impossible to know whether

actions such as training are effective when the NYPD has failed to comply with the Settlement's requirement that it implement "monitoring…sufficient to ensure compliance." ECF 80 at ¶ 16.

Plaintiffs' surveys and the anecdotal experiences detailed above—which are the only available evidence of compliance because Defendant has refused to provide any—raise at least a significant concern that Defendant is routinely failing to provide vouchers at all, or if it does provide them, is doing so in a manner inconsistent with Paragraph 16, causing the exact harms this case sought to redress. *See supra* at pp. 4-9; Jain Decl. at ¶¶ 5-10; Shoop Decl. at ¶¶ 13-19. These surveys showed that in some instances, the NYPD fails to provide people with a copy of the voucher, and in other cases fails to create a voucher at all. Jain Decl. at ¶ 7. Recent examples from clients of the Bronx Defenders show that these failings cause people confusion and delay in getting back their property, and in some instances have caused homelessness, loss of livelihood, and the permanent deprivation of personal property without compensation or due process. Shoop Decl. at ¶¶ 13-15. Indeed, Plaintiffs have even encountered instances where an individual affirmatively asked the NYPD for a property voucher and still was not provided one—despite the NYPD's obligation under Paragraph 16 to provide one in the first instance. *Id.* at ¶ 16. Together, these examples and evidence raise serious doubt about whether the NYPD has met its obligation to "implement policies and procedures, training, supervision, monitoring, and discipline sufficient to ensure compliance with RCNY § 12-32." ECF No. 80, ¶ 16.

As discussed above, Defendant has not offered any evidence to counter Plaintiffs' showing of noncompliance and in fact has suggested it concedes noncompliance; at a recent meeting, the NYPD confirmed that they have "not really been monitoring compliance because [they] don't really have a way to." Jain Decl. at ¶ 15.  Under similar factual circumstances, courts have stepped in to enforce settlement agreements. *See, e.g.*, *Baez v. New York City Hous.*

*Auth.*, No. 13CV8916, 2015 WL 9809872, at *3 (S.D.N.Y. Dec. 15, 2015) (appointing a Special Master to enforce a consent decree where "Plaintiffs' statistics are unrebutted and compelling").

Here, Plaintiffs seek a one year extension[3] of the Settlement's term, together with an order directing Defendant to demonstrate compliance with its obligations under Paragraph 16 of the Settlement within that time period. Without the Court's intervention, one of the primary promises Defendant made to Plaintiffs in securing their agreement to dismiss their claims—namely, the promise to provide people with their vouchers—will disappear. In light of evidence demonstrating longstanding difficulties with voucher delivery and the resulting harm to both property owners and The Bronx Defenders as Plaintiffs, compounded by the current circumstances of the pandemic, it is necessary for judicial oversight to continue for a reasonable period to ensure the City comes into compliance with its obligations. The relief Plaintiffs seek is narrowly tailored to enforce a clear obligation that is central to the Settlement; indeed, Defendant was already required to take steps "sufficient to ensure compliance." ECF 80 at ¶ 16. Thus, it is appropriate and necessary for the Court to grant the request. *See Berger v. Heckler*, 771 F.2d 1556, 1569 (2d Cir. 1985) ("[T]he district court's Amendment to the decree was appropriate in light of its duty to protect the integrity of its judgments.")

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court extend the sunset of the Settlement for one year and order Defendant to demonstrate compliance with Paragraph 16 in that period.

---

[3] In the event the Court grants this motion, Plaintiffs respectfully submit that the one year clock should begin to run when this Court orders the extension.

Dated: October 29, 2020                    Respectfully submitted,
       Bronx, NY

                                            _/s/ Niji Jain_____
                                            Niji Jain
                                            Adam N. Shoop
                                            Jenn Rolnick Borchetta
                                            THE BRONX DEFENDERS
                                            360 East 161st Street
                                            Bronx, New York 10451
                                            Telephone: (718) 838-7878
                                            njain@bronxdefenders.org

                                            *Counsel for Plaintiffs*