# EXHIBIT B



December 2, 2019

*By Overnight Delivery and Email*

Aviva Horowitz
Assistant Corporation Counsel
New York City Law Department
Administrative Law Division
100 Church Street, Rm. 5-149
New York, NY 10007
Email: ahorowit@law.nyc.gov

      Re:    *Encarnacion et al. v. City of New York, 16 Civ. 156 (DLC)*

Counsel:

Over the past two years, we have appreciated working collaboratively with you to implement the requirements of the settlement order in the above-referenced matter, and we recognize that the NYPD has taken steps toward our shared goal of compliance. But while much has been accomplished, the NYPD has persistently fallen short on the central requirement that it provide vouchers to people whose property it has taken. The deadline for full compliance is fast approaching. It is therefore imperative that the NYPD agree to take additional steps to satisfy its obligations.

Below we detail the steps we believe are necessary. Further, because it seems impracticable for the NYPD to meet its obligations within the current timeline, we ask that you agree to extend the settlement's sunset provision until six months following the rollout of PETS 2.0. Please note that this constitutes formal written notice pursuant to Paragraph 48 of the Stipulation of Settlement regarding the NYPD's failure to comply with its obligation to provide people their vouchers.

**<u>Settlement Obligations and Voucher Compliance Metrics</u>**

As you know, under the settlement, the NYPD is obligated to implement "policies and procedures, training, supervision, monitoring, and discipline sufficient to ensure compliance with RCNY § 12-32." *See* Paragraph 16 of the settlement.

In the first year after the settlement was ordered, the NYPD conducted department-wide training efforts on voucher delivery, including in service training of line officers, trainings for front line supervisors, and meetings with certain executive staff in the Bronx. The subsequent voucher delivery data we collected in January and February 2019 showed that these efforts were unsuccessful, as approximately half of people did not receive a complete voucher for their seized property. *See* Plaintiffs' letters to the City dated February 19, 2019 and May 21, 2019 (demonstrating a 53% compliance rate even after resolving all inferences in favor of the NYPD).

In response, the NYPD conducted additional training regarding the need to not only deliver vouchers timely, but also to create a voucher every single time personal property is seized. The NYPD also provided remedial training and counseling efforts in response to voucher delivery deficiencies at certain Bronx precincts.

Now, with the settlement period set to expire in less than three months, we have collected updated data demonstrating that police officers continue to fail on voucher creation and delivery. Over a recent period in October-November 2019, The Bronx Defenders fielded another survey regarding voucher delivery during arraignments. Out of 59 people surveyed who had property seized during their arrest, **over half** either did not receive a voucher at all, or received an incomplete voucher.[1] Specifically:

- 34% did not receive vouchers at all.
- 22% received partial vouchers (meaning that either they only received vouchers for some of their property, or, all the items were vouchered, but the required notice/instructions page was missing).

In other words, 56% of people—more than half—did not receive a complete voucher. The deficiencies were distributed across Bronx precincts, indicating that the problem is not limited to a few precincts in need of remedial efforts.

---

[1] Following our prior survey, the NYPD and the City asked for extensive information about the individuals who were surveyed so that the NYPD could do a follow up investigation on those instances. At this juncture, given the extremely low rate of voucher delivery, we do not think it is relevant or appropriate for the NYPD to respond by quibbling with individual instances. Rather, in light of Plaintiffs' data demonstrating systemic non-compliance over a 10 month period, it is incumbent on the NYPD to come forward with data demonstrating substantial compliance (e.g., by sharing results from recent QAD audits). If the NYPD cannot demonstrate compliance, then it must implement remedies beyond training to solve this problem.



Unfortunately, the data from January-February and October-November 2019 show similar levels of voucher delivery, meaning that there has not been a meaningful improvement following the NYPD's department-wide training efforts in 2018 and its targeted training and counseling efforts in 2019.

**Next steps**

In order to ensure the NYPD satisfies its obligations under the settlement order, we believe the following steps are necessary:

1. Extend the settlement period (with respect to the NYPD only) until 6 months following the rollout of PETS 2.0.
2. Implement a separate, monthly QAD audit focused on whether officers are (a) creating vouchers for every property item that is seized; and (b) delivering complete vouchers to every claimant.
3. Share the results of the QAD audits and information about subsequent remedial measures with Plaintiffs' counsel.
4. Implement disciplinary measures for individual officers who fail to create and/or deliver vouchers, as identified in QAD audits or by Plaintiffs, and/or note failures in RAILS or performance evaluations.
5. Place a computer with access to PETS in the courthouse complaint room or on the arraignments floor, to facilitate printing and delivery of a voucher (either upon someone's release or through their attorney) if it was not timely delivered prior to arraignments.

6. Ensure that vouchers are provided to the Bronx DA in the complaint room and request that Bronx ADAs provide a copy of all vouchers to defense counsel as part of the standard paperwork exchanged during arraignments.

In addition, we understand that the NYPD has suggested that two upcoming changes could collectively improve voucher compliance: (1) improvements to PETS 2.0, the second generation of the voucher software (which is expected to result in more efficient and timely preparation of vouchers due to linkage between PETS 2.0 and programs for the other paperwork that must be completed in conjunction with an arrest, as well as pop-up reminders that vouchers should be timely delivered to all claimants); and (2) the implementation of the new discovery rules.

In light of the current problems with voucher delivery, the settlement should be extended[2] for six months following the NYPD's confirmation that PETS 2.0 has been deployed in all precincts, which we understand is projected for mid-2020. This extension would enable the parties to assess whether the introduction of PETS 2.0 and the new discovery rules will be sufficient to achieve compliance with the NYPD's voucher delivery obligations. If it is not, then the parties will need to use the additional time to continue to work together to implement solutions so that property claimants receive due process in the seizure and retrieval of their property.

\* \* \*

Since the Settling Institutional Parties already have a meeting of the Working Group scheduled for December 10, we suggest using that convening to discuss this matter (as provided for under Paragraph 48 of the Settlement Agreement). To facilitate a productive discussion, we ask that you provide a response to these proposals via email no later than December 9, 2019.

                                                  Sincerely,

                                                  Niji Jain
                                                  The Bronx Defenders

cc: Sherrill Kurland; Samantha Schonfeld; Matthew Russo (by email)

---

[2] This proposal is with respect to the NYPD only; the Bronx DA's judicial supervision would end in February 2020 as previously ordered.