UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTOR ENCARNACION, KALEB HAGOS,
KENNETH CLAVASQUIN, and
THE BRONX DEFENDERS, individually and
on behalf of a class of all others similarly
situated,

       Plaintiffs,

– against –

THE CITY OF NEW YORK,

       Defendant.

16-cv-156 (DLC)

## DECLARATION OF ADAM SHOOP

I, Adam Shoop, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

  1. I am the Legal Director of the Civil Action Practice at The Bronx Defenders (BxD), located at 360 East 161st Street in the Bronx, New York. I am admitted to practice law in the State of New York and in this Court.

  2. BxD's Civil Action Practice (CAP) represents clients in myriad civil legal and administrative proceedings arising out of the collateral consequences of the criminal punishment and child welfare systems, such as eviction, loss of public benefits, police property seizure and loss of employment and licensing.

  3. I have been the CAP Legal Director since January 2018. Prior to becoming the Legal Director, I was a staff attorney in CAP for 6 years, and for two of those years I also had the added role of Property Seizure/Forfeiture Specialist.

4. I submit this declaration based on personal knowledge gained through the ordinary course of my role representing clients, managing and supervising staff, and my review of BxD's records.

5. While I have been Plaintiffs' counsel in this matter since this case was filed in January 2016, I am intentionally not disclosing information herein learned through my role as Plaintiffs' counsel and am instead limiting the information disclosed to that learned in my role within CAP.

6. BxD represents hundreds of clients annually who have difficulty retrieving personal property that is seized from them during an arrest. Commonly seized personal property includes keys, cell phones, wallets, cash, medications, cars, personal documents, jewelry, and clothing.

7. New York City's property retrieval laws are incredibly confusing, and have been referred to by scholars and federal courts alike as "bizarrely worded" and "byzantine."[1] CAP advocates and attorneys regularly assist clients in navigating these laws by obtaining documentation of seized property from the NYPD, requesting release authorizations from the district attorney's office that the property is no longer needed as evidence, making demands on the NYPD property clerk to return property, as well as representing people in civil forfeiture litigation.

8. When personal property is seized, the NYPD is required by the order in *McClendon v. Rosetti*, 1994 WL 17107022, at ¶ 3 (S.D.N.Y. Mar. 28, 1994) (Lasker, J.), and the identical corresponding regulation the NYPD itself promulgated at 38 R.C.N.Y. 12-32, to create a property invoice, also called a voucher. The NYPD creates and maintains these vouchers in their Property and Evidence Tracking System (PETS). The NYPD is also required to provide a copy of the voucher for the seized property on the spot or as part of the person's arrest processing. *Id.*

---

[1] 2-16 David B. Smith, *Prosecution and Defense of Forfeiture Cases* ¶ 16.04 (Matthew Bender 2014) ("a bizarrely worded provision"); *Ford Motor Credit Co. v. N.Y.C. Police Dep't*, 503 F.3d 186, 189 n.5 (2d Cir. 2007) ("byzantine statutory scheme").

9. In our experience as advocates, the voucher is a crucial document for several reasons.

10. First, it gives the client proof that their property was seized and creates a record for the NYPD to track that property as it is moved from the precinct to the property clerk office or other storage site. Without the voucher record, property is sometimes misplaced, stolen, or otherwise disappears. *See* Exhibit A (sample voucher).

11. Second, the voucher gives people notice and instructions on the steps they need to take to reclaim their property, which is important because the property retrieval process is quite complex and time consuming, and the rules and deadlines differ depending on the type of property, why it was seized, and the status of the person's criminal case. *See* Exhibit B (sample voucher notice provision page).

12. Third, the voucher document itself is often required to start the property retrieval process, so without it, clients may be unable to even request release of their property.

13. BxD regularly assists clients who did not receive a voucher for their property. Sometimes, we later learn that the property was never vouchered, meaning that the officer who seized the property did not make a record of it. When clients need to get back property that was not properly vouchered, it is very difficult and can create serious hardship for them. Included below are a few recent, representative examples,[2] arising since March 2020:

   a. During a client's arrest this spring, the NYPD seized all of his personal property, including his house keys. When the client attempted to pick up the house keys, the property clerk office did not have a voucher on file for the keys, and no one had any idea where they were. As a result, the client was homeless for four days until he was able to get the locks changed.

   b. Another client was arrested and the property seized from her included a purse, her new iPhone, and related electronic accessories, which were together worth many

---

[2] I submit these examples as anecdotal evidence and intentionally withhold personal identifying information. I expressly reserve all applicable privileges or protections. Should the Court require admissible evidence of the NYPD's voucher compliance or lack thereof, we respectfully submit that evidence should be provided by Defendant.

3

hundreds of dollars. When the client attempted to begin the property retrieval process, she realized she first needed a voucher. However, the property clerk office could not find a voucher in her name for any of her property. Her advocates escalated the situation to senior NYPD staff, and after further investigation, no one was able to locate a voucher or the purse, cell phone, or other property. When her advocates asked what recourse might be available for the loss of her property, the NYPD suggested that they file an Internal Affairs Bureau complaint to report the officer, but the client was not compensated for her property loss.

14. In other instances, clients are not provided a voucher, but we are subsequently able to obtain one from the property clerk office. In these instances, the NYPD creates the voucher in the Property and Evidence Tracking System ("PETS," the NYPD's voucher database), but fails to give a printed copy of the voucher and/or the notice provision page to the property owner during the arrest processing.

15. The lack of complete and timely voucher delivery is the most common problem we see—often on a weekly basis. Below are some recent, representative examples, arising since March 2020:

   a. We frequently assist clients who are anxious to get a car back because they need the car for work and family obligations. When they do not have a voucher, they do not know where to go to get the car back. Often they have spent days or weeks making visits to the precinct, calling the two auto pounds run by the NYPD where seized vehicles are taken, and going to the DA's office trying to figure out how to get their car back. They are frequently bounced around between offices because the procedure to get the car back depends on how the car was categorized by the NYPD, and the only way to figure that out is by looking at the voucher. Thus, people who don't receive vouchers end up wasting time trying to figure out the property retrieval process at the cost of earning their livelihood.

   b. We also regularly represent clients who were arrested while driving a car that belongs to someone else, such as an employer or family member. When the NYPD fails to

    give them a voucher, it impedes the ability of the car owner to understand what has happened to the car and how to navigate the release process.

c. Following the police brutality protests across New York City this summer, we heard from people who were arrested and had their personal property seized without being provided a voucher. Some of these people then had to make in-person trips on successive days to various property offices and precincts, where they were turned away without any information about where their property might be or how to get it back.

d. A young client was arrested and his iPhone was seized. Without the voucher, the client's CAP advocate did not know on what basis the phone was taken -- only for safekeeping or as potential evidence -- and could not advise on the necessary steps to retrieve the phone. Moreover, the only form of photo identification the client possessed was a school ID which the property clerk office will not accept to provide a voucher.

e. In another case the arresting officers took the client's cellphone and failed to provide a voucher. After he was arraigned, he went back to the precinct the following day to retrieve his phone but the precinct staff declined to return it. Instead, they told him he would get his phone on his next court appearance, scheduled more than a month later. In fact, this information was inaccurate; there is no procedure for either the district attorney or NYPD to return property at a court appearance. The NYPD Property Clerk's own website observes: "All property coming into and leaving the Property Clerk Division is subject to strict legal constraints."[3] Additionally, in the Bronx, criminal court appearances do not even take place in the same building where the property clerk office is located. Without the property retrieval notices and instructions that are supposed to be provided as part of the voucher, the client had no way to learn how to get back his phone, and he was further confused by misinformation provided by the police at the precinct.

---

[3] New York City Police Department Property Clerk Division website, available at https://www1.nyc.gov/site/nypd/services/vehicles-property/property-clerk.page (last accessed October 29, 2020).

16. In other instances, we have represented clients who were familiar with the difficulty of navigating the system without a voucher and therefore specifically requested a copy of their voucher from the police, and they were still refused.

17. When clients do not receive a voucher, they experience a range of harms. They are often confused about where to go to get their property back and often get bounced around from different offices and agencies as a result. For example, they may go back to the precinct since that is the last place they saw their property. The precinct might tell them to go to the property clerk office, but if the property was marked as arrest evidence, they may then be sent to the DA's property release unit to get a DA release. But the DA's office typically requires people to present a property voucher as part of their application for a DA release, so they may then be sent back to the property clerk to try to get a copy of their voucher. People who are trying to navigate this process pro se often become overwhelmed and give up, or they are unable to take more days off of work to make visits to various offices and end up giving up on their efforts to reclaim their property. Sometimes, the Bronx Property Clerk's staff refers pro se people who are having difficulty to our office for help. All of these roadblocks delay and sometimes entirely prevent people from getting their belongings back.

18. The COVID-19 pandemic intensifies the consequences of not receiving a voucher. Each additional trip to an office for property retrieval steps is another needless risk of exposure to the virus, both while in the agency's office and in transit. Moreover, people are facing particular economic hardship right now, where being without a work phone or car for even an extra week can be the difference between a family going hungry. A tablet or laptop someone cannot get back could interrupt their child's virtual schooling.

19. CAP's efforts assisting clients to retrieve their property involves ongoing, extensive, time consuming work. Figuring out how to advise a client on their property issues when they did not receive a voucher often requires multiple communications or trips to the Property Clerk's office. In the past year alone, CAP has handled hundreds of cases helping clients navigate the property retrieval process, despite the fact that in many cases, it should be possible for someone to get back their belongings pro se—if they receive a complete voucher

and the process runs as it is supposed to. This continued time and advocacy is a burden on BxD and results in continued harm that this case and settlement were supposed to remedy.

Dated: October 29, 2020  
Bronx, NY

                                                      Adam Shoop  
                                                    THE BRONX DEFENDERS  
                                                    360 East 161st Street  
                                                    Bronx, New York 10451  
                                                    (718) 838-7878