UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

VICTOR ENCARNACION, KALEB HAGOS, KENNETH CLAVASQUIN, and THE BRONX DEFENDERS, individually and on behalf of a class of all others similarly situated,

                                                    Plaintiffs,

          -against-

THE CITY OF NEW YORK,

                                                    Defendant.

------------------------------------------------------------------------ x

**DECLARATION OF MATTHEW RUSSO**

16-cv-156 (DLC)

       **MATTHEW R. RUSSO** declares pursuant to 28 U.S.C. § 1746, under penalty of perjury, as follows:

       1.     I am an Agency Attorney in the Legal Bureau of the New York City Police Department ("NYPD" or "Department"), currently assigned to the Civil Section. I have held the position of Agency Attorney since 2008. In that capacity, I have represented the NYPD in matters relating to property, litigated cases relating to property, advised the NYPD regarding the guidelines and rules regarding property and have helped the NYPD formulate and refine internal policies and procedures relating to property.

       2.     I am fully familiar with the facts and circumstances set forth herein based upon my review of the records maintained by NYPD, my participation in this case since its inception, and the applicable rules and regulations. I submit this declaration after conducting a review of NYPD's records. As an Agency Attorney, I have access to NYPD's records.

       3.     At all relevant times, the NYPD has been in compliance with the February 12, 2018 so-ordered agreement ("Settlement Stipulation"). Among other things, the Settlement

Stipulation set forth reforms to be taken by the NYPD and the Bronx District Attorney's Office regarding the polices and procedures for property voucher delivery. Notably, much of the time the NYPD has been obligated under the Settlement Stipulation was during unprecedented times – involving a global pandemic and sweeping police reform.

## THE SETTLEMENT STIPULATION

4. Pursuant to paragraph 16 of the Settlement Stipulation, the NYPD has and continues to follow practices and procedures which are consistent with Title 38 of the Rules of the City of New York ("RCNY") § 12-32. These practices include providing an individual with a voucher (as that term is defined in the Settlement Stipulation) for all property seized pursuant to an arrest no later than arraignment or alongside a desk appearance ticket ("DAT") (also as defined in the Settlement Stipulation) absent extraordinary circumstances.

5. Further, the NYPD has implemented policies, procedures, training, supervision, monitoring and discipline sufficient to ensure compliance with 38 RCNY § 12-32, including all those specific items listed in paragraphs 17 through 27 of the Settlement Stipulation. Since the Settlement Stipulation was signed the NYPD has taken substantial efforts to meet its obligations under the Stipulation, including the following:

    a. NYPD produced 2 training memos regarding the proper intake, handling and classification of property, Training Memo #08-19 in February 2019 and Training Memo #16-19 in April 2019. These Training Memos are produced by the New York City Police Department's Academy and are used to train members of the Department by explaining specific topics in a short format. They are also provided to designated individuals responsible for training in each command of the Department.

b.      NYPD provided Department wide in-service training on February 22, 2019, April 26, 2019, and July 26, 2019, on proper intake, handling and classification of property as well as voucher delivery. Each of these presentations lasted approximately 45 minutes. This in-service training is called "Command Level Training." Generally held once a month, a representative from each command of the Department, generally designated individuals responsible for training in those commands, attend a daylong seminar in which various units from around the Department present on various topics. Often times the Command Level training topics will relate to a topic in a Training Memo.

c.      During the summer of 2019, the NYPD provided multiple trainings regarding the proper handling of property and the issuance of vouchers. Separate trainings were given to each of the Patrol Borough Bronx Executive staff, the Patrol Borough Bronx Lieutenants and Training Sergeants and select commands upon request. In no less than four separate trainings, the NYPD provided specific targeted training on the topic of proper evidence classification and the requirements of the law and the NYPD Patrol Guide, including voucher delivery. Each of these trainings lasted approximately one hour.

d.      NYPD issued a Finest Message on September 11, 2019 regarding the proper procedures for vouchering all property in accordance with its published procedures, including service of vouchers. This Finest Message was done to address concerns raised in the Working Group to ensure that all property seized at the time of the arrest was accounted for. "Finest Messages" are a Department-wide messaging system. Each and every command receives them automatically.

Commanding officers and designated training personnel are then required to relay that information to members of service.

6. Pursuant to paragraph 17 of the Settlement Stipulation, the NYPD has provided and continues to provide the Bronx DA with the "ADA" copy of the Voucher(s) at the time the officer meets with the ADA in court prior to arraignment, or alongside DAT paperwork when issued, absent extraordinary circumstances.

7. Pursuant to paragraph 18 of the Settlement Stipulation, the Bronx Property Clerk has and continues to provide contact information for the Bronx DA at its customer-facing window.

8. Pursuant to paragraph 19 of the Settlement Stipulation, the NYPD provided an in-service training to ensure that NYPD Property Clerk employees were aware of, and were following the policies and procedures relating to voucher delivery (along with the additional training specified in paragraph 5 above) on or about January 26, 2018.

9. In accordance with paragraph 20 of the Settlement Stipulation, Section 208-03 Subsection 12e of the Patrol Guide has not been changed from the language specified in the stipulation. All of the Finest Messages described in the stipulation as "Exhibit C" are still in effect.

10. In accordance with paragraph 21 of the Settlement Stipulation, it remains the Bronx Property Clerk's practice to retrieve proof of identity from an inventory bag if the same was vouchered, except in extraordinary circumstances.

11. In accordance with paragraph 22 of the Settlement Stipulation, it remains the Department's practice to accept a single, valid, government issued photo ID bearing the appropriate address of claimant, provided the same is sufficient to establish the Claimant's identity.

12. In accordance with paragraph 23 of the Settlement Stipulation, it remains the Department's practice to permit, upon presentation of proper identification, attorneys for claimants and employees of attorneys' legal firms to obtain a copy of a Voucher from the NYPD Property Clerk by submitting a written request, signed by an attorney, on the law firm's letterhead, stating that his or her legal firm represents the Claimant, and designating by name any employee of his or her legal firm to request ad obtain a copy of the Voucher on behalf of the Claimant.

13. Defendant has not, since the time the Settlement Stipulation was signed, modified the language of Patrol Guide Section 208-03, Subsection 12e, or any other practices described in this stipulation, as contemplated in paragraph 24 of the Settlement Stipulation.

14. The Finest Messages, as described in paragraphs 25 and 26 of the Settlement Stipulation, are still in effect.

15. Defendant has conducted and continues to conduct the QAD audits as contemplated in paragraph 27 of the Settlement Stipulation in regards to compliance with Patrol Guide Section 218-30 and multiple other Department guidelines. QAD stands for "Quality Assurance Division." This unit is responsible for ensuring Department-wide compliance with its own policies and procedures. One of the tools used by QAD to achieve this is an audit. These random audits are conducted, generally, on a monthly basis; the Settlement Stipulation only requires they be conducted quarterly. One of the many components of the audit is to monitor a precinct's compliance with the Patrol Guide and the Rules of the City of New York regarding the service of vouchers. If a failure to comply with these requirements is discovered, it may result in disciplinary action. These audits are confidential, as they contain a very large scope of information and can result in disciplinary action against a member of the NYPD. Defendant never agreed to

share the results with Plaintiffs and cannot legally do so. At the usual pace of one precinct per month, it takes approximately 2 years for a city-wide audit to be completed.

16. Any Members of the NYPD acting contrary to the policies and practices described herein are in violation of NYPD policy and subject to discipline.

17. In their moving papers, Plaintiffs state "the NYPD confirmed that they have 'not really been monitoring compliance because [they] don't really have a way to.'" See Declaration of Niji Jain, at ¶ 15. This statement is taken out of context and misleading. The NYPD continues to monitor compliance with Patrol Guide Section 218-30 and the Rules of the City of New York via QAD audits, routine complaints and when opportunities to perfect processes present themselves. The NYPD has not however, and is under no obligation to, institute a system for the exclusive purpose of tracking the delivery of vouchers.

Dated:     New York, New York
              January 25, 2021

_____
MATTHEW R. RUSSO